

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00158-CR

_____

MICHAEL JENKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 35619-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After Michael Jenkins' vehicle was lawfully stopped by Texas State Trooper Christopher Brock and a fellow officer, and after Jenkins was given a warning for speeding and refused his consent for officers to search the vehicle, officers immediately requested a drug dog.[1] Jenkins' extended detention—beyond the initial speeding investigation and decision to issue a warning only—lasted approximately thirty minutes before the dog[2] arrived on the scene, sniffed the exterior of the vehicle, and alerted, suggesting to officers the presence of narcotics inside.[3]

Once Jenkins' pretrial motion to suppress the evidence resulting from the detention was overruled, Jenkins pled guilty to possession of a controlled substance and was sentenced to twelve years' imprisonment.

On appeal, Jenkins attacks the denial of his motion to suppress and asserts failure to consider the full range of available punishment. Because the officers lacked reasonable suspicion of Jenkins' criminal activity to justify his extended detention, the controlled substances, found only as the result of that detention, must be excluded from evidence. We, therefore, reverse Jenkins' conviction.

---

[1]According to Brock's vehicle-based video recording, at about 10:28 p.m. November 15, 2006, Brock stopped the vehicle driven by Jenkins for traveling seventy miles per hour in a sixty-five-mile-per-hour speed zone. At about 10:43, Brock issued Jenkins a warning for speeding and requested consent to search the vehicle. About 10:45, Jenkins refused to consent to a search.

[2]According to the video, the drug dog first sniffed at Jenkins' vehicle at about 11:13 p.m. and alerted shortly thereafter.

[3]A search of the vehicle discovered 2,999 Hydrocodone pills and several soda bottles containing liquid Codeine.

Jenkins does not challenge the initial detention for speeding.[4]  Instead, Jenkins argues both that Brock lacked reasonable suspicion to detain him further, after the initial purpose for the traffic stop had been accomplished and that the length of the extended detention was unreasonable.  While a police officer may request consent to search a vehicle after the purpose of a traffic stop has been accomplished, the police officer must have reasonable suspicion of some criminal activity to further detain the occupants or vehicle if consent is refused.  *Caraway v. State*, 255 S.W.3d 302, 310 (Tex. App.—Eastland 2008, no pet.); *Spight v. State*, 76 S.W.3d 761, 768 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Leach v. State*, 35 S.W.3d 232, 236 (Tex. App.—Austin 2000, no pet.); *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).  At issue here is that extended detention.

We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but reviewing de novo the trial court's application of the law.  *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record."  *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim.

---

[4]"A routine traffic stop resembles an investigative detention."  *State v. Cardenas*, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).  A law enforcement officer may lawfully stop and detain a person for a traffic violation committed in the presence of the officer.  *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd).  No doubt, Brock had reasonable suspicion to make the initial stop of Jenkins for speeding.

App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, after granting deference to the trial court's determination of historical facts, we review de novo determinations of reasonable suspicion and probable cause. *Guzman*, 955 S.W.2d at 87.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, the police must be able "to point to specific and articulable facts which, taken together with rational inferences from those facts," support a reasonable suspicion that the suspect is engaging in, or is about to engage in, criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). "The behavior of the suspect need not suggest the commission of a particular offense; any sufficiently suspicious criminal activity may justify a stop." *Hill v. State*, 951 S.W.2d 244, 247 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Here, again, we do not consider the obviously valid initial stop, but Jenkins' extended detention after officers decided to issue him only a warning for the initial offense, speeding, that warranted his initial stop.

*Terry* established a two-pronged test for investigative detentions. To determine the reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis*, 947 S.W.2d at 242 (quoting *Terry*, 392 U.S. at 19–20). Under the first prong of *Terry*, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Davis*, 947 S.W.2d at 242 (quoting *Terry*, 392 U.S. at 21).

4

The facts supporting reasonable suspicion must be considered in the context of the "totality of the circumstances" because "facts that do not show reasonable suspicion in isolation may do so when combined with other facts." *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). While none of the facts testified to by Brock would be sufficient to create reasonable suspicion for the extended detention, if considered alone,[5] the question before us is whether the facts are sufficient when considered together.

In his testimony, Brock articulated three main facts causing his suspicion and the extended detention: that Jenkins was "extremely nervous," that Jenkins denied having a criminal history, and that the route Jenkins claimed to have taken was not the most direct route between Huntsville and Longview. To support the categorization of Jenkins' nervousness, Brock testified Jenkins refused to make eye contact, Jenkins' voice was "real shaky," and "it's not that ordinary for someone to be that nervous." Brock also conducted a criminal background check of Jenkins' driver's license and "discovered he'd been handled before for narcotics violations." Brock testified that, when he asked Jenkins whether "he'd ever been arrested," Jenkins "stated no, he'd never been arrested." Brock also testified that the route Jenkins claimed to be taking seemed suspicious. Jenkins claimed to be

---

[5]Many of the specific, articulable facts referenced by Brock are "as consistent with innocent as with criminal activity." As this Court has noted in the past, the Texas Court of Criminal Appeals has abandoned the "as consistent with innocent activity as with criminal activity" test. *See Carter v. State*, 150 S.W.3d 230, 236 n.3 (Tex. App.—Texarkana 2004, no pet.); *see also Curtis v. State*, 238 S.W.3d 376, 378 (Tex. Crim. App. 2007); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal conduct." *Curtis*, 238 S.W.3d at 379 (quoting *Woods*, 956 S.W.2d at 37).

traveling from Huntsville to Gilmer with a planned intermediate stop in Longview. According to Brock, Jenkins claimed to have traveled Highway 19 through Canton and then to have turned east onto Interstate 20. Brock believed there were more direct routes for the described trip and testified that he discussed the alternatives with Jenkins.[6]

Some of that testimony is undermined by the video evidence. The Texas Court of Criminal Appeals has held the "almost total deference" standard of review continues to apply even when the "determination is based on a videotape recording admitted into evidence at a suppression hearing." *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) (rejecting suggestion in *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000), that deferential review should not apply to videos because review does not depend on evaluation of credibility and demeanor); *see Ex parte Van Alstyne*, 239 S.W.3d 815, 825 (Tex. Crim. App. 2007). The court, though, noted "[u]nder the appropriate circumstances, a video recording can be evidence of a compelling nature that requires that we discount testimony that conflicts with the recording." *Van Alstyne*, 239 S.W.3d at 825.

---

[6]Although Jenkins' testimony contradicted portions of Brock's account, we are required to defer to the trial court's factual findings, except as to appropriate corrections from the video evidence. Jenkins testified his voice was shaky because of the cold and the wind. Jenkins admitted he did not tell Brock about being placed on deferred adjudication for possession of cocaine, but claimed he did tell Brock he had been convicted for possession of marihuana and criminal mischief. Jenkins testified he "would have mentioned [the deferred adjudication] but [Brock] cut me off and started talking to me." Jenkins also claimed he told Brock he traveled through Crockett, not Canton. Jenkins denied telling Brock he had traveled through Canton. When asked if Canton was "way out of your way," Jenkins agreed. The trial court could reasonably believe Brock's version of the events over Jenkins' version.

We are forced to conclude Brock did not have reasonable suspicion to extend Jenkins' detention after concluding the traffic stop investigation. We reach this result because the facts articulated by the officers to justify the suspicion of Jenkins are either marginal or unwarranted. And those that we view as marginal, even if viewed at full strength and together, are insufficient to support reasonable suspicion to warrant the extended detention.

After carefully reviewing the video, we find that it compels us to reject the testimony that Jenkins denied having any criminal history. The video of the events is clear that Jenkins admitted to having a criminal record, which refutes Brock's testimony that he denied having a record. While Jenkins did not itemize all offenses, he was not specifically asked to itemize them. He was asked first whether he had ever been arrested, to which he answered, "Yeah, I have." The next question was what he had been arrested for. He answered by starting to list some items before the officer continued the dialogue about other things. The video does not show any effort by the officers to get from Jenkins an exhaustive list of his offenses. Based on the way the inquiries were made and responded to, we fail to see the reasonable suspicion this supplies to the situation.

We also find that the video evidence is compelling to refute at least part of the route discussion. Brock testified that Jenkins claimed to have traveled up State Highway 19 through Canton before taking I-20 east toward Longview. Traveling through Canton would certainly be out of Jenkins' professed way. But the video evidence is clear and compelling that, before the speeding

7

investigation was completed[7] and the extended detention was begun, Jenkins was involved in no discussion mentioning Highway 19 or Canton.[8] Therefore, the officers could not have learned from Jenkins anything about Highway 19 or Canton until after they had extended the detention. Facts creating reasonable suspicion which are acquired by the police after the challenged detention has begun cannot justify the (here, extended) detention at its outset. *St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007). In *St. George*, the defendant gave a false name to the police, but police did not discover the name was false until after the detention had begun. *Id*. The court cited *Terry* for the proposition that "an officer's actions must be justified at its inception." *Id*. The court held that "giving a false name when officers did not know it was false could not give them reasonable suspicion to investigate further." *Id*.

What is left of the route discussion as possible support for reasonable suspicion is a difference of opinion about which route from Huntsville to Longview was better, a more westerly

---

[7]From the video, the end of the speeding investigation can be easily determined. After briefly returning to the officers' vehicle to check Jenkins' criminal history over the radio, Brock walked back to Jenkins, writing something on his clipboard and telling Jenkins that he was being issued a warning for speeding. Immediately after that, Jenkins was asked for, and refused, consent to search his vehicle.

[8]Approximately five minutes after the drug dog was requested by officers, Jenkins informed Brock that he had traveled on Highway 19. We find no reference to Canton on the video, although there are spots—after conclusion of the speeding investigation—where the video either skips or is inaudible. Jenkins claims to have told Brock he traveled through Crockett, not Canton. Perusing a standard Texas highway map, one can see a quite reasonable route from Huntsville, through Crockett, leading to Longview—part of which route uses Highway 19.

route professed by Jenkins—which may be better supported by Huntsville's location to the northwest of Houston—or the more easterly route preferred by Brock.

While the video does not reveal any excessive or obvious nervousness from Jenkins, we defer to the testimony that Jenkins displayed nervousness in his voice and his failure to make eye contact, elements not clearly refuted by the video.[9] Thus, we are left with only Jenkins' assertedly suspicious route and nervousness as specific, articulable facts which may have given rise to reasonable suspicion, and thus may have authorized the extended detention.

Nervousness, conflicting statements of the occupants, and denial of prior drug arrests can be sufficient to warrant further detention. *See Powell v. State*, 5 S.W.3d 369, 378–79 (Tex. App.—Texarkana 1999, pet. ref'd). Here, having only one occupant, there are no conflicting statements of occupants. Plus, we have already noted Jenkins' admission to at least some criminal history. Nonetheless, "[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Nervousness alone, however, is not sufficient to justify detention. *St. George*, 237 S.W.3d at 726.

So what we are left with is a questioned (allegedly less than optimal) route and a nervous individual. The parties have not cited to us any case that finds reasonable suspicion based on those

---

[9]Viewing the video, we are armed with enough information to determine that, if Jenkins displayed nervousness, he did not display *extreme* nervousness. The video is clear enough to show that Jenkins was not fidgeting, gesturing, or otherwise moving in a nervous manner. On the other hand, Brock testified that Jenkins avoided eye contact and had a shaky voice, elements not clearly refuted by the video.

two factors alone.  Thus, we conclude officers did not have reasonable suspicion to extend Jenkins' detention.  We sustain this point of error and, therefore, reverse the judgment of the trial court and remand this case to the trial court for further proceedings.


                                                     Josh R. Morriss, III
                                                     Chief Justice

Date Submitted:      January 2, 2009
Date Decided:        January 16, 2009

Do Not Publish