

## NUMBER 13-07-00494-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JOSE JAIME MORIN RODRIGUEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                             Appellee.

### On appeal from the 92nd District Court of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Memorandum Opinion by Justice Benavides

A jury found appellant, Jose Jaime Morin Rodriguez, guilty of possession of less than one gram of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (Vernon 2003). The court assessed punishment at one year in prison with no fine. On appeal, Rodriguez argues that (1) the trial court erred by not allowing Rodriguez to testify, (2) the trial court admitted evidence obtained by an illegal search, (3) the trial court failed to

dismiss the prosecution based on the State's failure to preserve evidence, and (4) the trial court failed to appoint new or additional counsel and to allow self-representation. We affirm.

## I. BACKGROUND

On May 27, 2007, Officer Morales from the San Juan police department was dispatched to the home of Olivia Luna. When he arrived, Luna told him that she saw a man attempting to steal her window air conditioner unit. She threw something at him, and he ran away. When Luna went outside with her sister, she saw the same man get in a maroon car and drive away. She stated that there were other occupants in the vehicle. She and her sister provided Officer Morales with the description of the man, the vehicle, and a partial license plate number.

Sergeants Rodriguez and Robles, also from the San Juan police department, heard on the radio a description of the vehicle and the partial license plate number. They were in separate units. When they saw a vehicle matching both the vehicle description and the partial license plate number, they stopped the vehicle. Sergeant Rodriguez approached the passenger, Rodriguez, while Sergeant Robles approached the driver.[1] Sergeant Rodriguez advised Rodriguez that they had been stopped because the vehicle matched a vehicle from a burglary.

For safety reasons, Sergeant Rodriguez asked Rodriguez to exit the vehicle and conducted a pat search for weapons. As Sergeant Rodriguez patted down Rodriguez, a small packet containing a white substance, which Sergeant Rodriguez believed to be

---

[1] The driver was Christopher Nino, Rodriguez's nephew.

2

cocaine, fell to the ground.[2]  Rodriguez was arrested, and *Miranda* warnings were given.[3]

After arriving at the police station, Rodriguez was read his *Miranda* rights again, and he executed a waiver.  He then signed a voluntary statement admitting that the cocaine was his and that his nephew, the driver, did not know about it.

## II. RIGHT TO TESTIFY

Rodriguez first argues that he was not allowed to testify, in violation of his rights under the United States and Texas Constitutions.  *See* U.S. CONST. amend. V.; TEX. CONST. art. I § 10.  Rodriguez advised the court that, contrary to his counsel's advice, he wanted to testify.  After Rodriguez was sworn, the following exchange took place:

THE COURT:       Do you want to testify against the advice of your counsel, yes or no, Mr. Rodriguez?

[RODRIGUEZ]:     Your Honor, that is a question that I cannot just answer—

[THE STATE]:     Your Honor, we're going to object—we're going to object—

THE COURT:       All I want is [sic] do you want to testify, yes or no, and that's it?  I don't need a speech.  You've got a very good attorney there.  Now, he is advising you not to testify.  You have an absolute and constitutional right to testify.  It's your choice.  Now, you make up your mind now.  I don't care.  I'm not on trial.  None of us are.  If you wish to take the stand—if there is something you want to tell the jury then do so.  If you choose—but if you take the stand please be advised, I'm sure your attorney has advised you, you will be subject to cross-examination and a whole slew of other things can come in.  So make up your mind right now.

---

[2] Jose Zuniga, a chemist with TDPS, tested the white powder and confirmed that it was cocaine.

[3] Luna was taken to the location where the vehicle was stopped and positively identified the vehicle, but the person that was in her home was not Rodriguez.

[RODRIGUEZ]: If the court could—I mean—

THE COURT: I'm not here to plea bargain with you. I'm not here to argue. I'm not here to cajole with you. I'm not here to ask you for favors. My question to you is do you wish to testify, yes or no?

[RODRIGUEZ]: I will testify, Judge.

THE COURT: You will testify.

[RODRIGUEZ]: If officers can lie on the stand then—

THE COURT: Pardon me?

[RODRIGUEZ]: I will testify, sir.

THE COURT: Very well. That's all I need to hear.

The attorneys and the court then discussed whether the defense needed to reopen their case, and it was determined that such a motion should be conducted in front of the jury. Rodriguez then initiated another discussion of his decision to testify.

[RODRIGUEZ]: Your Honor, just—please just one question.

THE COURT: You have a lawyer. I am not going to sit here and listen to you. Off the record, please.

(Off the record)

THE COURT: I am not going to play games with you.

[RODRIGUEZ]: I am not playing games, Your Honor.

THE COURT: Okay. Your lawyer asked you a while ago, do you wish to testify, yes or no?

[RODRIGUEZ]: I will not testify out of fear, sir.

THE COURT: All right

[RODRIGUEZ]: Out of fear.

4

THE COURT:        Fine, sit down then.

Rodriguez did not testify.  The court then took judicial notice of the file and all proceedings and found that Rodriguez made a voluntary decision not to testify.

Rodriguez argues that he had a right to make a choice on whether to testify and to make that decision free of coercion.  Rodriguez asserts that the judge had a duty to, *sua sponte*, inquire as to what fear Rodriguez held and relieve him of that fear, if possible, instead of rushing to trial.  Rodriguez does not cite any authority for this proposition, *see* TEX. R. APP. P. 38.1(i), and we have not located any.  It is undisputed that Rodriguez's attorney, and the trial court, advised Rodriguez as to the consequences of testifying, and both prosecutors stated on the record that they had not coerced or threatened Rodriguez in any way.  The court provided Rodriguez with every opportunity to testify, but he decided not to do so.  No violation of his constitutional rights occurred.  *Cf. Salinas v. State*, 163 S.W.3d 734, 740-41 (Tex. Crim. App. 2005) (holding that the record did not support finding of ineffective assistance of counsel where the record did not show that appellant asserted right and that counsel failed to protect it).  We overrule Rodriguez's first issue.

### III. ILLEGAL SEARCH

Rodriguez next argues that when the police stopped him, he did not match the description of the suspect, and therefore, any investigation or search should have ceased.  Thus, the search was illegal, and any evidence obtained by the search is inadmissable.  Rodriguez filed a motion to suppress, a hearing was held, and the court denied his motion.

Whether a specific search or seizure was reasonable is a mixed question of law and fact and review is conducted de novo.  *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim.

5

App. 2004). We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We do not engage in our own factual review; rather the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Trial courts are given almost complete deference in determining historical facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case. *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). In the case before us, the trial court did not make explicit findings of fact. Under these circumstances, we view the evidence in the light most favorable to the trial court's rulings and assume that the trial court made implicit findings of fact supported by the record. *Ford, 158 S.W.3d at 493*.

At the hearing on the motion to suppress, Officer Morales and Sergeant Rodriguez testified. Officer Morales testified that he had been called to the home of Olivia, who advised him that a man had broken into her home. She provided a description of the man, the vehicle, and a partial license plate number. He also spoke to her sister, Maria Montanez, who provided a description of the vehicle and a partial license plate number. They both stated that the man had gotten in a maroon vehicle and driven away. Olivia and Montanez also stated that there had been other occupants in the vehicle. Officer Morales provided this information to other officers by way of a radio dispatch.

Sergeant Rodriguez, with Sergeant Robles, stopped a vehicle matching the

6

description provided by Officer Morales. The partial license plate number also matched. Sergeant Rodriguez approached the passenger, Rodriguez, and Seargent Robles approached the driver, Nino. Because the stop was made in an investigation of a burglary, as a safety precaution, the occupants were asked to exit the vehicle, and then they were pat searched. When Sergeant Rodriguez conducted the search of Rodriguez, a bag with cocaine fell to the ground.

In *Terry v. Ohio,* the Supreme Court addressed investigative detentions and held that an officer's action must be justified at its inception and must be reasonably related in scope to the circumstances that justified the interference in the first place. *Terry v. Ohio,* 392 U.S. 1, 21 (1968). The officer must "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* An officer is not required to actually feel personally threatened or be absolutely certain that a suspect is armed in order to justify a pat-down search. *Glazner v. State*, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005). The issue is whether a reasonable person would be warranted in believing that his safety, or the safety of others, was in danger. *Id.*

Here, Rodriguez does not contest that the police officers had probable cause to stop and temporarily detain the occupants of the vehicle because the vehicle matched the description of a vehicle used in a suspected burglary. Rodriguez instead argues that because he did not match the description of the burglar provided to police, the inquiry should have ended on that discovery. However, the report also indicated that other people were in the vehicle along with the suspected burglar. Thus, it was not unreasonable for the officers to continue detaining Rodriguez and his nephew to determine if they were involved

7

in the burglary.

Additionally, the pat-search was not unreasonable. The report indicated that the vehicle's occupants had recently been involved in a burglary; thus, it was not unreasonable for the officers to believe that the suspects might be armed. The officers were justified in conducting a pat-search for weapons. *See Terry,* 392 U.S. at 27-28 (holding that officers could reasonably assume that suspected robbery would involve use of weapons, although officer did not observe a weapon or physical indication of a weapon); *Carmouche*, 10 S.W.3d at 330.

Rodriguez argues that the case is analogous to *St. George v. State*, 237 S.W.3d 720 (Tex. Crim. App. 2007). In that case, the court of criminal appeals held that the search of a passenger in a traffic stop was illegal because the deputies lacked reasonable suspicion to continue the questioning. *Id.* at 726. The deputies made a traffic stop because the lights on the license plate were not working. *Id.* at 721-22. The driver provided her personal identifying information to the police. *Id.* at 722. When the passenger, St. George, was asked for identification, he stated he had a driver's license but did not have it with him. *Id.* After prompting, St. George gave a name and date of birth. *Id.*

When the police ran this information through the computer, they found no record. *Id.* While one deputy gave the driver a warning, the other deputy continued to question St. George. *Id.* After questioning, the deputy obtained more information, which revealed that St. George had provided an incorrect name and that he had warrants for speeding and for driving without insurance. *Id.* St. George was arrested ten minutes after the warning

8

citation was given to the driver. *Id.* When searching incident to the arrest, the officer found marijuana. *Id.*

The facts of St. George are distinguishable from this case. When Sergeants Rodriguez and Robles made the initial stop, they were investigating suspects in a burglary, not merely investigating a traffic stop. The report to the police regarding the burglary indicated that others were present in the vehicle along with the suspected burglar. The mere fact that Rodriguez did not match the description of the suspect did not require the officers to refrain from detaining him and conducting only a limited pat-search for weapons. The Sergeants had a legitimate concern for their safety, which justified asking Rodriguez to exit the vehicle and pat-searching him. We overrule Rodriguez's second point.

## IV. FAILURE TO PRESERVE EVIDENCE

By his third issue, Rodriguez argues that he was denied his due course of law right under article 1, section 19 of the Texas Constitution because the State failed to take videotape evidence of his encounter with the police. Specifically, he argues that San Juan Police Department patrol cars are equipped with video recorders, which begin recording interactions with police when the police car's overhead lights are activated. For budgetary reasons, however, the San Juan Police Department does not retain the videos. Rodriguez apparently believes that his case should be dismissed based on the failure to preserve this evidence. Rodriguez cites to *Pena v. State*, 226 S.W.3d 634 (Tex. App.–Waco 2007), *rev'd*, 285 S.W.3d 459 (Tex. Crim. App. 2009), for the proposition that he was not required to show that the officers acted in bad faith for destroying potentially exculpatory evidence.

The State counters that Rodriguez waived this issue by failing to object in the trial

9

court or otherwise alert the trial court of his complaint about the missing videotape. Alternatively, the State argues that Rodriguez has not established that the videotape possessed exculpatory value that was apparent before the evidence was destroyed, that the evidence was material to his case, and that there was bad faith in failing to retain the evidence, citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). We agree with the State that Rodriguez failed to preserve his issue for our review.

In *Pena v. State*, the Waco Court of Appeals held that the State violated Pena's rights to due course of law under the Texas Constitution by destroying potentially exculpatory evidence, even though Pena did not show bad faith. *Pena*, 226 S.W.3d at 654-55. In doing so, the Waco court held that the Texas Constitution provides greater protection for defendants than does the United States Constitution, under which a claim based on the destruction of evidence requires a showing of bad faith. *Id.* at 651. The court of criminal appeals reversed, however, finding that the error was not preserved. *Pena*, 285 S.W.3d at 463-64. Although Pena eventually argued that his rights under the Texas Constitution were violated, he never advised the trial court that he believed he should be afforded greater rights under the Texas Constitution than under the well-established standards developed under federal constitutional jurisprudence. *Id.*

In this case, not only did Rodriguez fail to argue in the trial court that he should be afforded greater protection under the Texas Constitution, he failed to raise any objection at all. Although Rodriguez's counsel questioned both Officer Robles and Sergeant Rodriguez about the use of video recordings in San Juan Police Department patrol cars, he never objected or argued to the trial court that his constitutional rights had been

10

violated, either under the Texas or United States Constitutions.  Under the circumstances, Rodriguez failed to preserve his third issue.  Accordingly, we must overrule it.  *Id.*

## V.  SELF-REPRESENTATION

By his fourth issue, Rodriguez argues that he was denied the right to self-representation and that the trial court appointed an attorney against his wishes.[4] Specifically, he argues that at one point during trial, he pointed out that the State had three attorneys while he had only one attorney.  He claims that "[i]t is clear [that he] felt he was not being treated fairly or heard.  He felt his attorney was not defending him properly, so the defendant requested a new attorney which was ignored by the court."  He concludes that the trial court "should have either appointed another attorney after hearing his grievance or allowed [him] to represent himself."

We do not construe Rodriguez's arguments as raising a claim of ineffective assistance of counsel.  Rodriguez neither cites to nor addresses the proper standard for establishing such a claim.  *See* TEX. R. APP. 38.1(i).  Rather, Rodriguez merely argues that the trial court (1) denied him the right to self representation, and (2) denied his request for the appointment of either new or additional counsel.

Rodriguez cites two portions of the record to support his claims.  First, during voir dire, the court explained the process to the prospective jurors, and Rodriguez interjected:

| THE COURT: | Voir dire examination of the jury panel enables the attorneys and the Court to select 12 |

---

[4] In a single paragraph, Rodriguez also argues that during a pretrial hearing on the appointment of counsel, the trial court learned that Rodriguez had mental illness questions but did not order a competency exam.  Rodriguez does not cite any law or make any argument that he is entitled to relief on this basis, and we do not address it.  *See* TEX. R. APP. P. 38.1(i).

|  |  |
|---|---|
|  | competent and qualified jurors who will do what? From them we will pick 12, and I also always pick two alternates just to be on the safe side. What do you expect of them? We expect you to listen to the evidence, keep an open mind and don't decide any issue until after the evidence is closed and then return a fair and impartial verdict. Be fair and impartial to whom? To both sides, to the State and to the Defense[.] |
| THE DEFENDANT: | Where they have three and I only have one attorney. |
| THE COURT: | Please be quiet, remain silent. |
| THE DEFENDANT: | You can tell I'm on medication. |

This exchange neither constitutes a request for additional counsel nor a request for self-representation. Thus, this exchange did not preserve Rodriguez's issue for appeal. *See* Tex. R. App. P. 33.1(a)(1)(A); *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992) (holding that the right to self-representation does not attach until it is clearly and unequivocally asserted); *DeGroot v. State*, 24 S.W.3d 456, 458 (Tex. App.–Corpus Christi 2000, no pet.).

Next, he points to an exchange later during voir dire, wherein he requested "another" attorney:

| THE COURT: | I hate microphones. That was an example of a bench conference where I bring the lawyers up here and I try to settle the issues without having you all step outside and be discombobulated if there be such a word in the English language. |
|---|---|
| THE DEFENDANT: | Your, Honor, for the last time I ask that you— |

THE COURT:          Cease—

[THE STATE]:        Judge, we have a Motion in Limine on this point. We knew that this Defendant has the propensity to address the Court.  He is not an attorney.  If the Court will look in the Court's file—

THE DEFENDANT:      I am asking for another attorney.

THE COURT:          Both sides—

[THE STATE]:        Yes, sir.

THE COURT:          —will settle down.

[THE STATE]:        Thank you.

THE COURT:          Please come up here again.

THE DEFENDANT:      I am trying to get assistance—

THE COURT:          Mr. Rivera.

THE DEFENDANT:      —for the defense.

MR. RIVERA:         Yes, Judge.

(Hearing at the bench not reported.)

THE COURT:          Take care of my request, counsel.

Again, this exchange does not clearly and unequivocally show that Rodriguez

13

wanted to represent himself. *DeGroot*, 24 S.W.3d at 458. To the extent that this exchange can be read as a request for different or additional counsel, however, Rodriguez has not shown himself entitled to such relief.

A defendant does not have the right to choose his appointed counsel, and the "trial court has no duty to search for counsel agreeable to the defendant." *See King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). "The defendant must accept counsel assigned by the court unless he effectively waives right to counsel in order to represent himself . . . or can show adequate cause for appointment of a different attorney." *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977). Likewise, a defendant does not have an absolute right to the appointment of more than one attorney. *Aranda v. State*, 640 S.W.2d 766, 771 (Tex. App.–San Antonio 1982, no pet.). Rather, in the absence of a showing that the failure to appoint an additional attorney somehow caused the defendant to receive ineffective assistance of counsel, no error is presented by the trial court's refusal. *Id.*

We have already held that Rodriguez did not invoke the right to self-representation. Rodriguez did not inform the court of any reason to appoint a different attorney in place of his appointed counsel. *See Thomas*, 550 S.W.2d at 68. Thus, he did not establish adequate cause to replace his appointed counsel. *See id.* With respect to his request for additional counsel, the only basis for this request was that the State had three attorneys, while he only had one. There is nothing in the record to show that his appointed counsel was ineffective or that his defense would have been any different had he been appointed additional counsel. *See Aranda*, 640 S.W.2d at 771. Accordingly, we overrule Rodriguez's

14

fourth issue.

## VI. Conclusion

Having overruled all of Rodriguez's issues, we affirm.

GINA M. BENAVIDES,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 31st day of August, 2009.

15