Opinion issued May 12, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00344-CR

———————————

Gary Allen Herman, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th District Court 

Harris County, Texas



Trial Court Case No. 1228069

 



 

MEMORANDUM OPINION

          A
jury found Gary Allen Herman guilty of the felony offense of burglary of a habitation
with the intent to commit theft and assessed punishment at 28 years’
confinement.[1]  On appeal, Herman contends that the evidence
is legally and factually insufficient to support his conviction, and that the
trial court erred in denying his motion to suppress his statements to a law
enforcement officer at the scene.  We
affirm the judgment of the trial court.

Background

          Earnest
Jamerson was outside his home when he saw Herman go through the side fence of a
neighbor’s house located across the street and five houses away.  Jamerson recognized Herman from seeing him
around the neighborhood attempting to sell merchandise and from a tear-drop
tattoo on his right cheek.  Jamerson
believed Herman’s name to be “Dominique.”  
Jamerson later saw Herman exit through the front door of the house and
load multiple objects into a grocery cart. 
Herman took several trips to fill the cart.  The objects appeared to be a square, heavy
object and various tools like a garden rake. 
Jamerson watched Herman push the cart down the street and pass directly
in front of his house.  Herman met a cab
at the end of the street, loaded the merchandise into the cab, and drove
away.  

          Lena
Thompson, the owner of the burglarized house, received a call from family
members that lived across the street telling her that Jamerson had seen someone
break into the house.  Her family told
her that Jamerson had seen “Dominique” go through the side gate, exit the front
door, carry merchandise to a grocery cart, then load the objects into a cab and
drive away.  Thompson arrived to find
that three window air conditioning units and several garden and work tools were
missing.  During this time, Thompson saw
Herman ride his bike past the house.  

          Officer
Small arrived at the scene and spoke to Thompson.  Shortly thereafter, Herman again rode past
the house on his bike.  Thompson and
several of her family members identified Herman as “Dominique.”  Officer Small approached Herman who stopped
to speak with him.  Herman wore a blue
jumpsuit with the name “Dominique” on the front.  In response to questions, Herman gave the
officer a fake name, his address, and his date of birth, but could not produce
any identification.  Officer Small ran
the information through the driver’s license database, but could not find a
match.  Herman insisted the information
was correct.  He denied any involvement
with the burglary and denied going by the name “Dominique.”  Officer Small continued to question Herman
while waiting for Jamerson to arrive. 
While talking to the officer, Herman mentioned that his son’s name was
Gary Herman, Jr.  Officer Small
eventually called the burglary and theft division at the Houston Police
Department, who confirmed that he did not have enough evidence to hold Herman
without Jamerson’s identification, and he released Herman.  The entire encounter between Officer Small
and Herman lasted between 30 to 45 minutes. 


          Officer
Small returned to the police station and conducted a more extensive database
search of Herman’s fake name without finding a match.  He ran the name “Gary Herman,” which Herman
had stated was his son’s name, and found a picture of Herman.  He also investigated the address Herman had
given him, but no one answered the door and the condition of the lawn led him
to believe that no one lived at the home. 
Based on Officer Small’s report, Officer Mora developed a photo array including
Herman and showed the array to Jamerson two months after the burglary.  Jamerson positively identified Herman as the
burglar.  

          At
trial, the State called Officer Small to describe his investigation and his
conversation with Herman.  Herman made an
oral motion to suppress his statements to Officer Small and asserted that he
was under arrest at the time and had not been properly advised of his
rights.  Herman specifically requested
that the following statements be suppressed: the discussion of the name
“Dominique,” Herman’s son’s name, the fake name, and his denial that he knew
anything about the robbery. 

The trial court conducted a hearing
outside the presence of the jury and gave both sides the opportunity to
question Officer Small.  Officer Small
testified that he never arrested Herman or restrained him in any way.  He stated that he was conducting an
investigation and that he released Herman without a positive identification.  On cross-examination, Officer Small conceded
that he had detained Herman to make an identification and he was not free to
leave at that point.  Officer Small later
contradicted himself by saying Herman could have left because the officer had
nothing on which to hold him.  The trial
court then the questioned him:

The
Court: [A]fter you got a name, whether it
was a good  name or a bad name—

 

[Officer
Small]: He’s able to go, yes, ma’am.

 

The
Court:  —10 or 15 minutes later, if
he had gotten on his bike and rode away, would you have held him or would you
have let him go? 

 

[Officer
Small]:  I would have let him go.

 

The trial court concluded that Herman was not in
custody and denied the motion to suppress. 
Officer Small then testified before the jury about the results of his
investigation.  

          In
addition to Officer Small’s testimony, Jamerson testified to witnessing the
crime and Officer Mora testified to the photo array and Jamerson’s clear
identification.  The State admitted the
photo array which Jamerson had initialed and dated along with a map and
satellite photo indicating the relative distance between Thompson’s house and
where Jamerson stood on the day of the burglary.  Thompson identified the stolen objects.  

Herman testified and denied any
involvement in the robbery.  He stated he
gave a false name because of an outstanding warrant against him for writing bad
checks.  He asserted that the name
“Dominique” on his jumpsuit and in Jamerson’s statement was a coincidence.  He testified as to his criminal record
including past felonies in the 1980s and three misdemeanors since his release
from jail in 2000, including one conviction for trespassing.  He also stated he lived in the neighborhood
with his family about four blocks from the scene.  

The jury found Herman guilty of
burglary of a habitation with the intent to commit theft.  At the punishment phase of trial, Herman
stipulated to his prior convictions.  The
jury assessed punishment at 28 years’ imprisonment.  Herman timely filed this appeal.  

Sufficiency of the Evidence

          In
his first issue, Herman contends the evidence is insufficient to support the
jury’s finding identifying Herman as the burglar.

A.      Standard
of Review

This court reviews sufficiency-of-the-evidence challenges
applying the same standard of review, regardless of whether an appellant raises
a legal or a factual sufficiency challenge.  See Brooks v. State, 323 S.W.3d 893, 912, 927–28 (Tex. Crim. App.
2010); see also Ervin v. State, 331 S.W.3d 49, 52–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d). 
This standard of review is the standard enunciated in Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  See Brooks, 323 S.W.3d at 912, 927–28.  Under
this standard, evidence is insufficient to support a conviction if, considering
all the record evidence in the light most favorable to the verdict, no rational
fact finder could have found that each essential element of the charged offense
was proven beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Laster v. State, 275
S.W.3d 512, 517 (Tex. Crim. App. 2009).  We can hold evidence to be
insufficient under the Jackson standard in two circumstances: (1) the
record contains no evidence, or merely a “modicum” of evidence, probative of an
element of the offense, or (2) the evidence conclusively establishes a reasonable
doubt.  See Jackson, 443 U .S. at 314, 320, 99 S. Ct. at 2786,
2789.  The sufficiency-of-the-evidence
standard gives full play to the responsibility of the fact finder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  An appellate court presumes that the fact finder
resolved any conflicts in the evidence in favor of the verdict and defers to
that resolution, provided that the resolution is rational.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793.

B.      Sufficient
Evidence of Burglary of a Habitation

          A person
commits the offense of burglary of a habitation if “without the effective
consent of the owner, the person . . . enters a habitation . . . not then open
to the public, within intent to commit a felony, theft, or an assault.  See Tex. Penal Code Ann. § 30.02(a)(1)
(West 2003).  Herman contends that the
evidence is insufficient to link him to the burglary.  More specifically, he asserts that the only
evidence that he committed the burglary is Jamerson’s testimony that he saw
Herman commit the offense and his identification from Officer Mora’s photo
array.  

The testimony of a single eyewitness,
however, is sufficient to support a jury’s finding of guilt.  See Aguilar
v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); see Davis v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st
Dist.] 2005, no pet.).  Jamerson testified that he witnessed Herman
go around the side of the house and leave the house from the front door
carrying objects.  He testified that
Herman pushed the loaded grocery cart directly in front of where he stood and
that he recognized Herman from the neighborhood.  He also later positively identified Herman
through Officer Mora’s photo array.  This
evidence amounts to more than a “modicum” of evidence to support the
jury’s finding that Herman committed the burglary.  See
Burks v. State, No. 01-08-00521-CR, 2010 WL 143463, at *2 (Tex. App.—Houston [1st Dist.] Jan. 14, 2010, pet. ref’d)
(mem. op., not designated for publication) (holding evidence sufficient for
burglary of habitation when two neighbors testified to seeing defendant exit
front door); see also Hollander v. State,
No. 09-05-00448-CR, 2006 WL 2623279, at *1–3 (Tex. App.—Beaumont Sept. 13,
2006, pet. ref’d) (mem. op., not designated for publication) (holding evidence
sufficient for burglary of habitation conviction when neighbor testified to
seeing defendant go around side of mobile home and exit front door with
refrigerator).

Herman
asserts other evidence raises a reasonable doubt on the identity element—namely his testimony denying involvement in the
burglary, the testimony that he rode his bike by the house after the crime
multiple times, the alleged deficiencies in Officer Small’s investigation, and
the fact that Jamerson did not mention seeing Herman carrying air-conditioning
units.  The jury is the sole judge of the
weight and credibility to give the evidence at trial and is free to credit some
evidence and discredit other evidence.  See Davis, 177 S.W.3d at 359.  Therefore, the jury was free to believe
Jamerson’s testimony and his identification of Herman as the burglar.  See
Davis, 177 S.W.3d at 359.  

We overrule
Herman’s first issue. 

Motion to Suppress

          In his second issue, Herman
contends the trial court erred in denying his motion to suppress his statements
made to Officer Small.  He asserts
Officer Small questioned him while he was under arrest and without the benefit
of the statutory warnings under Miranda
v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966), and article 38.22 of the Code of Criminal
Procedure.  See Tex. Code Crim. Proc.
Ann. art. 38.22 (West 2005).  

A.      Standard
of Review

We review a trial court’s ruling on
a motion to suppress for abuse of discretion. 
Amador v. State, 275 S.W.3d
872, 878 (Tex. Crim. App. 2009).  An
appellate court will sustain the trial court’s decision if it concludes that
the decision is correct on any theory of law applicable to the case.  Id.
at 878–79

We apply a bifurcated standard of
review to a ruling on a motion to suppress. 
St. George v. State, 237
S.W.3d 720, 725 (Tex. Crim. App. 2007).  In
a hearing on a motion to suppress, the trial court is the sole and exclusive
trier of fact and judge of the credibility of the witnesses and the weight to
give their testimony.  Id.  Therefore,
we first give almost total deference to the trial court’s determination of
historical facts that the record supports, especially those “based on an
evaluation of credibility and demeanor.” 
State v. Garcia-Cantu, 253
S.W.3d 236, 241 (Tex. Crim. App. 2008). 
We apply the same deference to the trial court’s “rulings on application
of the law to questions of fact and to mixed questions of law and fact, if
resolution of those questions depends on evaluation of credibility and
demeanor.”  Crain v. State, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).  Second, we review de novo questions of law
and mixed questions of law and fact that do not turn not credibility and
demeanor.  See Garcia-Cantu, 253 S.W.3d at 241.  

Here, the trial court concluded
that Herman was not “in custody” at the time he made the statements to Officer
Small.  The trial court did not determine
any “historical facts” such as whether Herman was free to leave during
questioning and the custody finding did not turn on credibility and demeanor.  See
State v. Sheppard, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008) (stating
determination of arrest or investigative detention constitutes a legal
conclusion and not a determination of historical fact). Therefore, we review the trial court’s application of legal
principles to historical facts de novo.  See id. 


B.      Arrest
& Investigative Detention

          Herman
asserts that his statements to Officer Small are inadmissible because the
length and manner of his detention effectively transformed the stop into an arrest
and triggered the need for Miranda-based
warnings.  Miranda or statutory warnings must be given when a person is under
arrest or subject to custodial interrogation. 
See Tex. Code Crim. Proc. Ann. art. 38.22; Herrera v. State, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).  Miranda-based
warnings are not required in an investigative detention.[2]  See Campbell
v. State, 325 S.W.3d 223, 233
(Tex. App.—Fort Worth 2010, no pet.).  At trial,
the defendant bears the initial burden of proving that a statement was obtained
in the course of a custodial interrogation. 
Herrera, 241 S.W.3d at
526.  

A law enforcement officer
conducting an investigative detention temporarily detains a person suspected of
criminal activity in order to obtain more information.  Hoag v.
State, 728 S.W.2d 375, 380
(Tex. Crim. App. 1987); see King v. State,
35 S.W.3d 740, 743–44 (Tex. App.—Houston [1st Dist.] 2000, no pet.).  An arrest and an investigative detention
differ in the degree of the intrusion and the different legal standards to
justify the officer’s conduct.[3]  Akins
v. State, 202 S.W.3d 879, 885 (Tex. App.—Fort Worth 2006, pet. ref’d).  A suspect is not free to leave in either an
arrest or an investigative detention and both are considered “seizures” for
constitutional purposes.  See Crain, 315 S.W.3d at 49.  

We look to
the totality of the circumstances to determine whether an officer conducted an
arrest or an investigative detention.  Sheppard, 271 S.W.3d at 291; Herrera, 241 S.W.3d at 525.  Courts consider several factors in distinguishing
between the degree of restraint associated with a formal arrest and an
investigative detention.
These factors include: the degree of force used by the officer, the
duration of the detention, the nature of the crime under investigation, the degree
of suspicion, the location of the stop (i.e., whether the officer transports
the suspect to another location), the time of day, the reaction of the suspect,
and the officer’s intent and opinion.[4]   See
Sheppard, 271 S.W.3d at 291; Campbell, 325 S.W.3d at 234.  In terms of the degree of force
used, courts consider the presence of multiple officers, use or exhibition of a
weapon, any physical touching of the suspect, and the use of language and tone
of voice indicating that the officer might compel the suspect to comply with
requests.  Crain, 315 S.W.3d at 49–50.  

For an
investigative detention, an officer must also have actually conducted an
investigation.  See Sheppard, 271 S.W.3d at 291; Campbell, 325 S.W.3d at 234.  Evidence of an investigation includes
verifying the suspect’s identity, asking for a suspect’s reason for being in
the area, “or similar reasonable inquiries of a truly investigatory nature.”  Campbell,
325 S.W.3d at 234.  Finally, an
investigative detention must be temporary and the questioning may last only as
long as necessary to “effectuate the purpose of the stop.”  Balentine
v. State, 71 S.W.3d 763, 770 (Tex. Crim. App. 2002).  

Based on the totality of the circumstances, we hold that Herman
was not under arrest at the time of his questioning, but was instead the
subject of a valid investigative detention. 
Officer Small approached Herman on foot as the suspect rode in his
bicycle down the public street after Thompson and other bystanders identified
him as “Dominique.”  Officer Small did
not use force to detain Herman and the record contains no evidence of any other
method of coercion.  At no point in the
encounter was Herman handcuffed, placed in the patrol car, or physically restrained
in any way.  Officer Small was the only officer involved.  No gun was shown during the encounter, nor is
there evidence that Small’s use of language or tone of voice indicated that
compliance might be compelled.  Herman
was never told that he could not leave. 
At that time, there was no probable cause to arrest him and Officer
Small released him after HPD told him he did not have sufficient evidence for
probable cause.  The
encounter occurred in the afternoon in front of Thompson’s house, another
factor that indicates the lack of a custodial interrogation. See Sheppard, 271 S.W.3d at 291.  The witnesses at trial described Herman as
cooperative as he answered Officer Small’s questions and he made no attempt to
flee the scene.  All of these facts together indicate that Herman was not in
custody.  See Crain, 315
S.W.3d at 49–50; Sheppard, 271 S.W.3d at 291; Dowthitt v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

Officer Small also conducted an
investigation.  He asked Herman for his
name and address, whether he ever went by the name “Dominique” as written on
his jumpsuit, and whether he was involved in the burglary.  He continued to ask Herman questions after
being unable to verify his identity. 
Thus Officer Smith in fact conducted an investigation as required for an
investigative detention.  See Sheppard, 271 S.W.3d at 291.  

Herman
asserts that the length of his detention dictates his detention was
unreasonable and amounted to an arrest. 
No bright-line rule exists for the length of a permissible investigative
detention, but the detention must be temporary and no longer than necessary to
effectuate the purpose of the stop.  Balentine, 71 S.W.3d at 770.  Herman and Officer Small’s encounter lasted
between 30 to 45 minutes.  Courts have
found longer detentions to be permissible as long as the stops were not longer
than necessary.  See Balentine, 71 S.W.3d at 770–771, 770 n.7 (holding detention
which lasted between 30 and 60 minutes reasonable); Josey v. State, 981 S.W.2d 831, 845 (Tex. App.—Houston [14th Dist.]
1998, pet. ref’d) (holding 90 minute detention reasonable).  Officer Small also testified that he could
not verify Herman’s identity because of the fake name Herman gave and continued
to ask follow-up questions.  Herman’s
evasive answers, therefore, increased the amount of time needed to conduct the
investigation.  See Balentine, 71 S.W.3d at 771 (stating amount of time necessary
for investigation increased because of defendant’s evasive answers).  

The parties
dispute whether Herman was free to leave, but this is not the focus of our
inquiry because a person subject to an investigative detention is not free to
leave.  See Crain, 315 S.W.3d at 49. 
Further, even more intrusive physical restraints than Officer Small’s
method may constitute investigative detentions. 
See, e.g., Sheppard, 271 S.W.3d at 292 (holding that officer’s brief
handcuffing of suspect in order to conduct search of trailer for another
suspect was investigative detention and not Fourth Amendment arrest); Rhodes v. State, 945 S.W.2d 115, 117
(Tex. Crim. App. 1997) (stating investigative detention occurred when officer
testified he handcuffed suspect chiefly out of safety concerns after car chase
through high-crime area).  “In Miranda, the Court was primarily
concerned with the fact that custodial interrogation is inherently coercive; it
typically involves ‘incommunicado’ questioning ‘in a police-dominated
atmosphere’ and ‘compelling pressures which work to undermine the individual’s
will to resist and to compel him to speak where he would not otherwise do so
freely.’”  Herrera, 241 S.W.3d at 531 (quoting Miranda, 384 U.S. at 445, 467 S. Ct. at 1602)).  There is no evidence that the coercive
aspects of custodial interrogation were present during Officer Small’s
questioning.

We conclude
that Officer Small conducted a valid investigative detention and not an
arrest.  See Balentine, 71 S.W.3d
at 770.  Therefore, no Miranda-based warnings were
required.  See Campbell, 325 S.W.3d at 233.  Therefore, the trial court did not err in
denying Herman’s motion to suppress.  

We overrule
Herman’s second issue.

Conclusion

          We hold the evidence is sufficient to
support the jury’s guilty finding on burglary of a habitation.  We also hold the trial court did not err in
denying Herman’s motion to suppress his statements to Officer Small.  We therefore affirm the judgment of the trial
court. 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §
30.02(a)(1) (West 2003).





[2]           The
Court of Criminal Appeals declined to address the question of whether a
defendant who is arrested under Texas statutes for the purposes of Fourth
Amendment seizure is considered at the same time to be in custody for the
purpose of protecting a defendant’s custodial statements under Miranda and the Fifth Amendment.  See Dowthitt v. State, 931 S.W.2d 244, 268 n.8 (Tex. Crim. App.
1996). On appeal, Herman does not challenge the legality of his
detention as a Fourth Amendment seizure. 
However, this and other courts have looked to Fourth Amendment
jurisprudence for guidance in determining whether a defendant is under arrest
or undergoing custodial interrogation at the time of the defendant’s statements
to law enforcement.  See, e.g., Campbell v. State,
325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.); see also Maxwell v. State, No. 01-00-00708-CR, 2002 WL 356530,
at *4 (Tex. App.—Houston [1st Dist.] Mar. 7, 2002, pet. ref’d) (mem. op., not
designated for publication).

 





[3]           An
arrest requires probable cause to justify the seizure while an investigative
detention requires a reasonable, articulable suspicion that the person detained
is connected with criminal activity.  Amores v. State, 816 S.W.2d 407, 411
(Tex. Crim. App. 1991).  

 





[4]           Courts
utilize all of these factors in Fourth Amendment cases to determine the type of
seizure conducted by the officer and the justification for the seizure.