**Jeffery Michael ST. GEORGE, Jr., Appellant**

v.

**The STATE of Texas.**

**Nos. PD–999–06, PD–998–06.**

Court of Criminal Appeals of Texas.

Oct. 31, 2007.

Robert Kersey, Granbury, for Appellant.

Lori J. Kaspar, Asst. County Atty., Granbury, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

Appellant, Jeffery Michael St. George, Jr., was charged with possession of marijuana and failure to identify as a fugitive. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (Vernon Supp.2001) & TEX. PEN.CODE ANN. § 38.02 (Vernon 2006). Appellant filed two pre-trial motions to suppress, which were denied following a hearing. Appellant then pleaded guilty to both charges, reserving the right to appeal the trial court's rulings denying his motions to suppress. The court of appeals reversed the trial court's rulings, holding that the trial court erred by denying Appellant's motions to suppress his statements and the marijuana. *St. George v. State,* 197 S.W.3d 806, 825 (Tex.App.-Ft. Worth 2006). We granted the State's petition for discretionary review to determine whether the court of appeals erred in holding that Appellant was illegally detained when he was questioned by the deputies once the initial reason for the traffic stop had ended. We will affirm the court of appeals.

### Relevant Facts

On the evening of October 21, 2002, two Hood County Sheriff's Deputies, Sonny

Frisbie and Robert Young, stopped a vehicle for having an inoperative license plate light. *See* TEX. TRANSP. CODE ANN. § 547.322 (Vernon 1995). The stop was recorded by a video camera located in the deputies' patrol unit and a microphone worn by Deputy Young. Deputy Frisbie informed the driver that her license plate light was not working, while Deputy Young checked the vehicle registration and safety inspection stickers on the windshield of the vehicle. Deputy Frisbie then requested identification from the driver. The driver identified herself as Suzanne St. George and presented Deputy Frisbie with her driver's license. Deputy Frisbie subsequently asked Appellant, the only passenger in the vehicle, for identification. Appellant told Deputy Frisbie that he had a driver's license, but that it was not with him. At the suppression hearing, Deputy Frisbie testified that when prompted, Appellant initially gave the name of John Michael St. George and a date of birth of December 16, 1975. Both deputies returned to their patrol unit to run the information they received from Appellant and the driver.[1] The license and warrant checks for the driver came back clear. The dispatcher reported that there was no record of a driver's license matching the name and date of birth given by Appellant. Deputy Frisbie issued the driver a warning citation for the inoperative license plate light approximately nine minutes into the stop. While Deputy Frisbie was explaining the warning ticket to the driver, Deputy Young asked Appellant if his driver's license was expired and Appellant responded that it was. After further inquiries, the deputies ultimately learned Appellant's true name to be Jeffrey Michael St. George. When they ran this name, the deputies found that Appellant had outstanding warrants for speeding and for not having insurance. He was arrested ten minutes after the citation was issued to the driver. In the search incident to arrest, the officers found marijuana in a pack of cigarettes in Appellant's pocket. Appellant filed a motion to suppress the evidence, claiming that the detention, questioning, and investigation was pursued without a warrant and without probable cause or reasonable suspicion. After a hearing, during which the investigating deputies testified and the court viewed a videotape of the stop, the trial court denied the motion without filing findings of fact or conclusions of law. Appellant pled guilty to the charges and received deferred adjudication. He filed an appeal challenging the trial court's denial of his motions to suppress evidence.

## Court of Appeals

Considering the scope test outlined in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court of appeals reasoned that the continued detention and investigation of the passenger would be reasonable if, during the traffic stop, officers developed reasonable suspicion that the passenger was engaged in criminal activity. And, while officers may question a passenger and request identification without separate reasonable suspicion of the passenger, they may not compel the passenger to answer or imply that compliance with the request is required. *St. George,* 197 S.W.3d at 819–820. After viewing the videotape of the stop, the court created a timeline of the events that took place. Based on *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the court of appeals reasoned that once the warning citation was issued to the driver, the deputies should have stopped questioning Appellant because they did not have reasonable suspicion to believe that Appellant was involved in criminal activity.

---

1. The driver was later identified as Appellant's mother.

*St. George,* 197 S.W.3d at 820. The court disagreed with the State's contentions that the initial misidentification and Appellant's nervousness gave the deputies reasonable suspicion to continue questioning Appellant because the deputies did not know that the initial name and date of birth given by Appellant was incorrect until long after the warning citation was issued. *Id.* at 822. Additionally, citing our holding in *Holladay v. State,* 805 S.W.2d 464 (Tex. Crim.App.1991), *overruled on other grounds by Hunter v. State,* 955 S.W.2d 102, 106 (Tex.Crim.App.1997), the court stated that nervousness alone is not enough to amount to reasonable suspicion. *St. George,* 197 S.W.3d at 822. The court of appeals held that the prolonged duration of the detention was a violation of the Fourth Amendment because the State never established articulable facts arising during the initial traffic stop to support a reasonable suspicion to justify the deputies' continued detention and investigation of Appellant for nearly ten additional minutes. *Id.* at 823.

The court of appeals then determined whether the evidence presented at the suppression hearing violated the "fruits of the poisonous tree" doctrine. Because the evidence was gained by the continued questioning, the court determined that all statements regarding Appellant's identity, barring the first consensual identification, should have been suppressed.[2] The court further held that the marijuana was found in the search incident to arrest on outstanding warrants, which were discovered only after deputies obtained Appellant's correct name and birth date by continued questioning during the prolonged detention. As such, the court of appeals held that the marijuana should have been suppressed as well. The court held that the trial court erred in denying Appellant's

motions to suppress and reversed the convictions. *Id.* at 825.

### Arguments of the Parties

The State contends that the court of appeals erred in holding that Appellant was illegally detained when he was questioned by deputies once the initial reason for the traffic stop had ended. The State argues that, although the court of appeals acknowledged its function was to give almost total deference to a trial court's determination of historical facts, it dedicated a substantial portion of its opinion to a narration of the events during the stop. *St. George,* 197 S.W.3d at 812–815. Moreover, the State argues that the court of appeals mischaracterized the sequence of events that occurred in its narration of the stop, leading them to incorrectly hold that the stop was a fishing expedition. The State contends that the issuance of the driver's warning citation and the questioning of Appellant occurred simultaneously.

The State points out that in *Duff v. State,* 546 S.W.2d 283, 286 (Tex.Crim.App. 1977), this Court determined that an officer does not need independent reasonable suspicion to request identifying information from a passenger, as long as the officer does not attempt to coerce a passenger's cooperation. The State further notes that this Court has held that a passenger does not have to be overjoyed or even comfortable with the encounter for it to be considered consensual. *State v. Velasquez,* 994 S.W.2d 676, 678 (Tex.Crim.App.1999). In this case, the State argues that, although Appellant may have been uncomfortable with the deputies' questioning, the videotape of the stop indicates that the entire encounter was nonetheless consensual.

In addition to the detention being consensual, the State argues that the contin-

---

**2.** The court of appeals held that the first identification was consensual because Appellant

voluntarily answered Deputy Young's question.

ued questioning of Appellant was reasonable because within seconds of the initial reason for the stop being completed, the deputies had formed independent reasonable suspicion that Appellant was committing the offense of Failure to Identify.[3] The State contends that Appellant was in violation of subsection (b)(2) because the deputies had reasonable suspicion to detain Appellant. Based on the deputies' experience, Appellant's behavior was suspicious, including slouching, lack of eye contact, evasive answers, and the fact that he gave them at least two different names and dates of birth. Therefore, it was reasonable to suspect that Appellant was engaged in criminal activity. The State cites *United States v. Cortez*, 449 U.S. 411, 422, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), which said that it is reasonable for officers to evaluate evidence based on their experience. According to the State, Appellant was also in violation of 38.02(b)(3) because he was present for the commission of the criminal offense by the driver.

In addition, the State contends that *United States v. Brigham*, 382 F.3d 500 (5th Cir.2004) supports the trial court's rulings in this case.[4] The State points out that in *Brigham*, a nervous passenger was questioned by officers about his identity four minutes into the stop. The State further notes that while officers were conducting the initial reason for their investigation, they were confirming the passenger's identity as well. In both *Brigham* and in this case, deputies did not learn the passenger's true identity until after the citation was issued. The Fifth Circuit Court of Appeals held that the officer's actions in *Brigham* were within the scope of the stop because of the officer's increasing suspicion that the passenger may be lying. *Id* at 509.

Finally, the State argues that even if the detention was illegal, the discovery of outstanding warrants attenuated the taint of the marijuana they discovered in the search incident to arrest, so the marijuana should not be suppressed.

Appellant contends that the court of appeals correctly held that the trial court erred by denying his motions to suppress because his interrogation and prolonged detention as a passenger of a vehicle subject to a routine traffic stop violated the Fourth Amendment. Appellant argues that his presence in the vehicle was a random event in relation to the reason for the traffic stop, and as such, he should be regarded as a pedestrian toward whom police have no reasonable suspicion under a *Terry*[5] analysis.

Appellant argues that the demands for his identification were non-consensual, evidenced by the fact that he objected to the continued questioning two times and that deputies repeatedly made it clear to him that he could not leave until his information checked out. And, because the questioning was not consensual, deputies

---

**3.** Texas Penal Code section 38.02 states in relevant part:

> (a) A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information.
> (b) A person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has:
>> (1) lawfully arrested the person;

>> (2) lawfully detained the person; or
>> (3) requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense.

**4.** The State suggests that *Brigham* is not binding authority in this case, but points out that this Court has found the case instructive in other cases. *See e.g. Kothe v. State*, 152 S.W.3d 54, 65 (Tex.Crim.App.2004).

**5.** *Terry v. Ohio* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889

needed reasonable suspicion to continue questioning Appellant after the initial reason for the stop concluded. Appellant points out that he asked why he was being questioned after the driver had already been ticketed and Deputy Young responded "It's just because you're nervous." Appellant notes that this Court held in *Holladay v. State*, 805 S.W.2d 464, 473 (Tex.Crim.App.1991), that any single element, including nervousness, is not sufficient to raise reasonable suspicion and therefore, the deputies did not have reasonable suspicion to believe that he was committing the offense of Failure to Identify. Appellant contends that he was not in violation of Penal Code section 38.02(b)(2), because according to Deputy Young's testimony at the suppression hearing, Appellant was absolutely free to go and as such, subsection (b)(2) is inapplicable because Appellant was not detained. As far as subsection (b)(3) is concerned, Appellant argues that he does not fall under this exception either because according to the videotape, he did not get out of the vehicle until his arrest, therefore he did not see the inoperative license plate lamp and was not a witness to the traffic offense.

In addition, Appellant addresses the State's *Brigham* analogy. Appellant distinguishes the instant case from *Brigham* by pointing out that *Brigham* involved a driver, not a passenger. Since *Brigham* was the driver, his presence at the traffic stop was not random whereas as a passenger, Appellant's presence was random. Officers have the right to conduct an investigation of a driver following a traffic violation, but do not have authority to investigate a passenger without reasonable suspicion.

### Standard of Review

■ Whether a specific search or seizure was reasonable is a mixed question of law and fact and is conducted *de novo*.

*Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim.App.2004). We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim.App.2005). We do not engage in our own factual review, rather the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). Trial courts are given almost complete deference in determining historical facts. *Carmouche v. State* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003).

■ In the case before us, the trial court did not make explicit findings of fact. Under these circumstances, we view the evidence in the light most favorable to the trial court's rulings and assume that the trial court made implicit findings of fact supported by the record. *Ford*, 158 S.W.3d at 493. In this case, a videotape of the stop was provided to the trial court at the suppression hearing and is included in the record. Such evidence is particularly helpful when an issue is contested. *See Carmouche v. State*, 10 S.W.3d at 332 (determining that the videotape of the stop contradicted the officer's testimony during a hearing on a motion to suppress regarding consent to search). We conduct a *de novo* review of evidence when the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89.

### Discussion

■ In *Terry v. Ohio*, the Supreme Court addressed investigative detentions

and held that an officer's actions must be justified at its inception and must be reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868. Although *Terry* did not specifically consider passengers in a vehicle subjected to an investigative detention, the test outlined in *Terry* is sufficiently comprehensive to address this issue as well. Appellant challenged the second part of this test and argued that officers' continued questioning was not related to the justification for the stop, therefore, without reasonable suspicion that Appellant was engaged in criminal activity, the continued detention and investigation was illegal.

■ Absent reasonable suspicion, officers may conduct only consensual questioning of passengers in a vehicle. *See Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (stating that officers may not convey a message that compliance with their request is required absent reasonable suspicion). The State claims that the misidentification by St. George, coupled with his nervous demeanor, amounted to reasonable suspicion that Appellant was committing the offense of Failure to Identify. However, as the court of appeals noted, the deputies did not learn that Appellant misidentified himself until after the driver was issued a warning citation. Therefore, giving a false name when officers did not know it was false could not give them reasonable suspicion to investigate further, nor was the fact that the dispatcher found no record of the first name given by Appellant sufficient to raise suspicion of criminal activity. *St. George*, 197 S.W.3d at 822. And, in *Holladay*, 805 S.W.2d at 473, we determined that any single trait, including nervousness, is not enough to amount to reasonable suspicion.

■ If an encounter is determined to be consensual, reasonable suspicion is unnecessary. *Duff*, 546 S.W.2d at 286. Although Deputy Young testified at the suppression hearing that Appellant was absolutely free to go, it is clear that this encounter had become non-consensual.[6] After the citation was issued to the driver, the deputies requested Appellant's name and date of birth multiple times and repeatedly told him that this has to be resolved before he could leave. Several minutes after the completion of the traffic stop, the deputy continued questioning Appellant and Appellant responded, "The problem is you're questioning someone who is not even driving a car and just sitting here and she got her ticket and there shouldn't be any other problem here." We agree.

We cannot conclude that the State has established the reasonableness of the detention required by this Court in *Kothe*. 152 S.W.3d at 67 (holding that police may briefly detain individuals for further investigation during a traffic stop as long as they can establish the reasonableness of the detention). At the time the driver was issued the warning citation, the deputies did not have specific articulable facts to believe that Appellant was involved in criminal activity, thus, the questioning of Appellant regarding his identity and checks for warrants, without separate reasonable suspicion, went beyond the scope of the stop and unreasonably prolonged its duration. *See Brown*, 443 U.S. 47, 52–53, 99 S.Ct. 2637 (holding that unless an officer can prove that he or she has a specific basis or belief that an individual was involved in criminal activity, their detention will be deemed unconstitutional).

---

**6.** We agree with the court of appeals' determination that the initial identification was consensual in nature because Appellant did

not hesitate to provide deputies with a name and date of birth, albeit false.

We do not intend to create a bright line rule that would automatically make an investigative detention unreasonable the moment that the initial reason for the traffic stop ends. Because the officers failed to show reasonable suspicion in this case, it was unreasonable for them to continue detaining Appellant long after the warning citation was issued.

## Conclusion

Because Appellant's continued detention was unreasonable, based on its non-consensual nature and the fact that the deputies lacked reasonable suspicion to continue questioning Appellant once the initial reason for the traffic stop ended, we affirm the judgment of the court of appeals.

KELLER, P.J., dissented.