

**NUMBER 13-11-00328-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellant,** |
| **v.** | |
| **CLINT SAENZ,** | **Appellee.** |

### On appeal from the 28th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant, the State of Texas, filed this appeal challenging the trial court's granting of a motion to suppress filed by appellee, Clint Saenz. Saenz was indicted on one count of driving while intoxicated ("DWI"). *See* TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011). The indictment also alleged that Saenz had been convicted of DWI on two prior occasions, thereby enhancing the alleged offense to a third-degree felony.

*See id.* § 49.09(b)(2) (West Supp. 2011). Saenz moved to suppress certain oral statements made to police, and the trial court granted the motion. The State contends that the trial court abused its discretion in doing so. We affirm.

## I. BACKGROUND

Officer Phillip Bintliff of the Corpus Christi Police Department testified that he was dispatched to a Whataburger restaurant in the early morning hours of April 29, 2010. The dispatcher advised Officer Bintliff that a witness reported "two males . . . trying to start a fight with some of the customers inside." The witness also advised that both of the males were intoxicated, and that one was wearing a white shirt and the other a green shirt.

When Officer Bintliff arrived at the scene, he noted that Saenz and his passenger met the descriptions relayed by the witness on the 911 call. Saenz was in the driver's seat of a truck improperly parked across two handicapped parking spaces. According to Officer Bintliff, the key was in the ignition, the engine was running, and the reverse lights were on, indicating that the truck was in reverse gear. Officer Bintliff instructed Saenz to "park the car and turn it off." Saenz initially declined and, exhibiting a "confused, dazed-type look," claimed that he "wasn't driving." Officer Bintliff repeated his instruction. Saenz again failed to comply, and instead told the officer that he was "moving the truck for somebody." Officer Bintliff then instructed Saenz to turn off the car a third time; this time, Saenz complied.

Officer Bintliff testified: "As soon as I got [Saenz] out, I could smell the alcohol on his breath. I saw his eyes were bloodshot." He then put Saenz in the backseat of his patrol car. Officer Bintliff did not testify that he told Saenz anything, at any point, other than to turn off his car. He did not testify that he advised Saenz that he was not under

2

arrest; nor did he testify that he advised Saenz that he was a suspect for DWI or any other crime.

Officer Justin Sanders, a DWI investigator, then arrived at the scene. Before asking Saenz to perform field sobriety tests, and before administering *Miranda* warnings, Officer Sanders asked Saenz several questions regarding his alcohol consumption and the means by which he arrived at the Whataburger. Saenz responded in part that he was trying to break up a fight and had consumed six beers in four hours. Saenz was then arrested for DWI.

Saenz moved to suppress the oral statements he made to Officer Sanders and, after hearing the testimony of Officers Bintliff and Sanders, the trial court granted the motion. In its findings of fact and conclusions of law, the trial court found specifically that Officer Sanders based his decision to arrest Saenz for DWI in part on the statements provided in response to the initial questioning. The trial court further found that "reasonable suspicion was lacking to believe that [Saenz] was about to commit a crime when Officer Bintliff detained him and placed him in his patrol vehicle." The trial court concluded:

> [Saenz] was under arrest for suspicion of DWI when Officer Sanders began questioning [Saenz] about where he had been, how he arrived at the Whataburger, how much alcohol he had been consuming, where he was consuming alcohol and how long he had been drinking. . . . Officer Sanders did not read [Saenz] the [*Miranda*] statutory warnings prior to the interrogation.

This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West 2006) (providing that the State is entitled to appeal an order granting a motion to suppress "if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial

3

importance in the case").

## II. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). We "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We "afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id.* On the other hand, we conduct a de novo review of evidence when the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor. *St. George*, 237 S.W.3d at 725 (citing *Guzman*, 955 S.W.2d at 89).

We review the trial court's decision for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). "We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *Id.* The trial court's ruling will be upheld if it "is reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

Saenz argued in his motion to suppress that he "was not given a legally sufficient warning of constitutional and statutory rights as guaranteed by the United States Constitution and the Code of Criminal Procedure of the State of Texas by the person or persons to whom [Saenz] allegedly gave an oral statement." After the suppression

4

hearing, the trial court concluded as a matter of law that "[Saenz] was under arrest for suspicion of DWI when Officer Sanders began questioning [Saenz]"—that is, the trial court found that Saenz was under custodial arrest at the time he gave the statements at issue. This conclusion of law constitutes an answer to a mixed question of law and fact—i.e., whether or not Saenz was under custodial arrest at the time he made the challenged statements. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) ("A trial judge's ultimate 'custody' determination presents a mixed question of law and fact.") (internal quotation omitted). Answering this question necessarily involves an evaluation of the credibility and demeanor of the two police officers that testified at the suppression hearing, because custody is "a fact-specific inquiry," *id.* at 535, and because the only facts in the record were those established by the officers' testimony. We therefore must give "almost total deference" to this conclusion of law. *Id.* at 526–27 ("[W]e afford almost total deference to a trial judge's 'custody' determination when the questions of historical fact turn on credibility and demeanor."); *see Guzman*, 955 S.W.2d at 89.

## III. DISCUSSION

Article 38.22, section 3 of the code of criminal procedure provides that an oral custodial statement is inadmissible as evidence unless, among other things, the accused is warned prior to the statement as provided in section 2 of that article and knowingly, intelligently, and voluntarily waives the rights set out in the warning. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2).[1]

---

[1] Section 2 of article 38.22 requires that the accused receive the following warnings:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

5

The court of criminal appeals has suggested that there are at least four general situations which may constitute custody for purposes of *Miranda* and article 38.22:

(1)     when the suspect is physically deprived of his freedom of action in any significant way,

(2)     when a law enforcement officer tells the suspect that he cannot leave,

(3)     when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and

(4)     when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Shiflet v. State,* 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)).   Concerning the first through third situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention.  *Id.* (citing *Stansbury v. California*, 511 U.S. 318 (1994)); *see Terry v. Ohio*, 392 U.S. 1, 30–31 (1968).[2]

---

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time . . . .

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1)-(5) (West 2005).  An accused must be administered these warnings "or their fully effective equivalent" in order for the statement to be admissible.  *Id.* art. 38.22, § 3(e)(2).

[2] In *Terry*, the United States Supreme Court stated:

We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the

Concerning the fourth situation, the officers' knowledge of probable cause must be manifested to the suspect. *Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury*, 511 U.S. at 325). Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. *Id.* The manifestation may be made "by word or deed" to the individual being questioned. *Stansbury*, 511 U.S. at 325. Custody is established only if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Dowthitt*, 931 S.W.2d at 254.

Here, Officer Bintliff had reasonable suspicion to detain Saenz because it appeared to him that Saenz was in the process of operating a vehicle while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04(a) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.").[3] For the same reason,

---

outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

392 U.S. 1, 30–31 (1968). The Texas Court of Criminal Appeals has construed *Terry* to permit "a temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed." *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008) (citing *Terry*, 392 U.S. at 30–31). "[A] Fourth Amendment *Terry* detention is not a custodial arrest" for purposes of *Miranda* or article 38.22 of the Texas Code of Criminal Procedure. *Id.*

Because we find that this case is an example of the fourth type of situation that may constitute custody according to *Dowthitt*, we also conclude that the trial court did not abuse its discretion in implicitly determining that Saenz's detention was not a temporary *Terry* stop. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (citing *Stansbury v. California*, 511 U.S. 318 (1994)) (stating only that the first, second, and third custody situations are subject to the *Terry* temporary stop exception).

[3] "Public place" is defined as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PENAL CODE ANN. § 1.07(a)(40) (West Supp. 2011). It is undisputed that the Whataburger parking lot was a "public place" for purposes of the DWI statute. *See State v. Nailor*, 949 S.W.2d 357, 359 (Tex. App.—San Antonio 1997, no pet.) (holding that a hotel parking lot that was open to the public 24 hours a day constituted a "public place"); *Kapuscinski v. State*, 878 S.W.2d 248 (Tex. App.—San Antonio 1994, writ ref'd) (holding that a

7

Officer Bintliff had probable cause to arrest Saenz for driving while intoxicated at the time he placed Saenz in the back seat of his patrol car.[4]  *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); *see also* TEX. PENAL CODE ANN. § 49.04(a).  The officers also had probable cause to arrest Saenz for public intoxication at that time.  *See* TEX. PENAL CODE ANN. § 49.02 (West 2011) ("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another.").

Officer Bintliff's knowledge of probable cause to arrest Saenz was "manifested" to Saenz when he put Saenz in the back of his patrol unit without saying anything to him, as the record reflects.  *See Stansbury*, 511 U.S. at 325 (noting that an officer's knowledge of probable cause may be manifested to the suspect "by word or deed").  Neither officer testified that Saenz was told at any point that he was free to leave.  *Dowthitt*, 931 S.W.2d at 254.  The facts of this case, as reflected by the record and the trial court's findings, therefore fit squarely into the fourth category of situations which

nightclub parking lot, provided for guests of the nightclub and open to the public, was a public place).

"Operating" is not defined in the penal code.  *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012).  Statutorily undefined words and phrases must be "construed according to the rules of grammar and common usage.  Words and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly."  TEX. GOV'T CODE ANN. § 311.011 (West 2005); *see* TEX. PENAL CODE ANN. § 1.05(b) (West 2011) (stating that government code section 311.011 is applicable to the penal code).  To "operate" is defined in part as "to cause to function."  MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 815 (10th ed. 1996).  It is apparent that Saenz was "operating" the truck when— as observed by Officer Bintliff—he was in the driver's seat with the key in the ignition, the engine running, and the vehicle in reverse gear.

[4] Officer Bintliff acknowledged as much in his testimony.  When the prosecutor asked what happened after he put Saenz in the back of his patrol car, Officer Bintliff replied:

> Like I said, I'm trying to find the witnesses.  I'm trying to figure out what had happened. But then again, I also smelled the alcohol on Mr. Saenz'[s] breath.  I could see his eyes were bloodshot.  He was in the driver's seat.  He had care, custody, and control over the truck.  While I was determining, you know, what—the disturbance was, I also had a blue unit, one of our DWI units come to the scene.

may constitute custody as set forth by the Texas Court of Criminal Appeals in *Dowthitt*. *See id.* (describing the fourth situation as "when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave").

Considering all the circumstances, and giving due deference to the trial court's findings, we conclude that a reasonable person in Saenz's position at the time he made the challenged statements would have believed that he was under restraint to the degree associated with an arrest. *See id.* Accordingly, the trial court did not abuse its discretion in concluding that Saenz was in custody at the time he made the statements or in suppressing those statements.[5]

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting Saenz's motion to suppress.

DORI CONTRERAS GARZA,
Justice

Dissenting Memorandum Opinion
By Justice Rose Vela.

Delivered and filed the
28th day of December, 2012.

---

[5] Saenz also argued in his motion to suppress that the statements "were the product of an unlawful arrest, illegal detention and an unlawful search and seizure in direct violation of the Fourth and Fourteenth Amendments to the United States Constitution." The trial court apparently agreed, concluding that "reasonable suspicion was lacking to believe that [Saenz] was about to commit a crime when Officer Bintliff detained him and placed him in his patrol vehicle." Because of our conclusion that the trial court's granting of the motion to suppress was justified on Fifth Amendment grounds, we do not address the reasonable suspicion issue. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)) ("We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case."); *see also* TEX. R. APP P. 47.1.