**AFFIRMED and Opinion Filed March 2, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-19-01488-CR
_____

### CLIFTON MARK NOWLIN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2
Dallas County, Texas
Trial Court Cause No. F-1859157-I**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Smith

Appellant Clifton Mark Nowlin was indicted for theft of property, value of at least $2500 but less than $30,000, enhanced by two prior state jail felonies. He filed a motion to suppress "any and all evidence seized . . . on or about November 13, 2018 from a 1997 White Ford F350 truck." The trial court denied the motion to suppress. Nowlin pleaded not guilty, but a jury convicted him of the charged offense. He pleaded true to the enhancement paragraphs, the trial court found them to be true, and then sentenced him to thirty-six months' confinement.

In a single issue, Nowlin challenges the denial of his motion to suppress because, although officers could see the truck in plain view from the street, he argues their entry onto the curtilage of the property to conduct a warrantless search of the truck violated his Fourth Amendment rights. We conclude the truck was not within the curtilage; therefore, the officer's observations were not the result of an unlawful trespass. Because officers had a lawful right to access the area, the numerous items observed in plain view indicating the truck was stolen was not a violation of the Fourth Amendment. We affirm the trial court's judgment.

## Background

The following facts are from both the suppression hearing, in which Detective Patrick Jobe was the only testifying witness for the State, and from the trial on the merits.

Monti Collier, a mechanic, listed his white 1997 Ford F350 on Craig's List for $5,000. On September 12, 2018, the truck was stolen while parked outside his shop. He noticed broken glass and the door lock laying on the ground. He reported the stolen truck to DeSoto police.

On November 12, 2018, a confidential informant told Detective Jobe that Nowlin was in possession of a white Ford truck. Although the informant did not tell Detective Jobe where the truck was located, Detective Jobe generally knew the area where Nowlin hung out based on previous dealings with him over the past decade.

The following morning, Detective Jobe went to Nowlin's property. Detective Jobe described the property as "basically land, a grass field with a dirt path that leads up to what would be a trailer, and then in the back side of that property there's a mobile trailer and there's a couple of storage sheds on that property."

As he drove up, Detective Jobe saw an older, white king cab Ford truck. The truck was parked on the grass six feet behind a chain-link fence that ran along the street. Nothing blocked the view of the property or the truck from those driving by. The gate in front of the property was open, and there were no signs prohibiting trespassers.

From the street, Detective Jobe could see the license plate affixed to the back of the truck. He ran the plates, and they came back registered to a red Ford truck. In addition to mismatched plates, he also observed that the front driver-side vent window was broken, the truck's hood was up making it easier to take off and exchange parts, and he saw a nearby engine hoist, which could be used to pull engines from stolen vehicles.

He then entered the property, approached the truck, and looked for the VIN displayed on the dashboard. The VIN was not attached, but instead laying on the dashboard. When he ran the VIN, it did not match the white truck. Based on his training and experience, these were all signs of a stolen vehicle.

Detective Jobe noticed someone sleeping under blankets. For officer safety, he opened the door, recognized Nowlin, and ordered him out of the truck.

Once the door was open, Detective Jobe looked for verifying marks inside the truck, but those were also removed. He noticed the steering column and the ignition were busted. Numerous license plates were in the truck, none of which matched the truck. Based on the information Detective Jobe received from his informant and the condition of the truck when he found it, he was "a hundred percent" sure the truck was stolen, but he needed an officer from the auto theft division to confirm.

Detective Royson Stacy, an auto theft investigator, arrived at the scene. After cleaning some of the hidden component areas of the truck, Detective Stacy found an eight digit sequential number. The numbers came back as a partial return on Collier's stolen truck.

Officers arrested Nowlin despite his denial that the truck was stolen. Nowlin subsequently filed a motion to suppress.

At the suppression hearing, Detective Jobe testified that he did not need a warrant to search the truck because it was parked on an unimproved surface in violation of a city ordinance, and he had a reasonable belief that the truck was stolen based on information from an informant and his observations in plain view when he drove up to the property. Nowlin argued the warrantless search was illegal because Detective Jobe entered the curtilage of the property without exigent circumstances. The trial court denied the motion to suppress without entering findings of fact and conclusions of law.

On October 28, 2019, Nowlin filed a motion to reconsider his motion to suppress. Prior to the commencement of voir dire, the trial court denied the motion. At the conclusion of trial testimony, defense counsel reurged the motion, and the trial court again denied it. The jury found Nowlin guilty, and this appeal followed.

**Standard of Review**

We review a motion to suppress using a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). When, as here, the trial court did not make written findings and conclusions, we view the evidence in the light most favorable to the trial court's ruling and assume the court made implied findings that are supported by the record and that buttress its conclusions. *Id.* at 328; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The trial court is the sole judge of witness credibility and the weight to be given their testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The judge is entitled to believe or disbelieve all or part of any witness's testimony, even if uncontroverted. *Id.*

In determining whether the trial court's ruling on a motion to suppress is supported by the record, we generally consider only the evidence adduced at the hearing on the motion. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). "However, this general rule is inapplicable where, as in this case, the suppression issue has been consensually re-litigated by the parties during the trial on

the merits." *Id*. Therefore, we may consider trial testimony in our review of the trial court's suppression determination. *Peterson v. State*, No. 05-12-00728-CR, 2013 WL 4130479, at *6 (Tex. App.—Dallas Aug. 14, 2013, no pet.) (mem. op., not designated for publication). We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court made the judgment for the wrong reason. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *see also Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

## Discussion

In a single issue, Nowlin challenges the denial of his motion to suppress. Nowlin argues, in part, that an officer cannot enter the curtilage of a residence simply because he sees a suspicious truck parked within it. The State responds the truck was not parked in the curtilage of the property, but instead was in an open field. Therefore, the State argues that because Nowlin did not have an expectation of privacy in the open field, the officers did not violate his Fourth Amendment rights by entering the property and observing numerous items in plain view indicating the truck was stolen.

The parties agree the officers conducted a warrantless search. A warrantless search is considered per se unreasonable unless it falls within a few well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Giroux v. State*, No. 05-19-00189-CR, 2020 WL 4281950, at *4 (Tex. App.—Dallas July 27, 2020,

no pet.) (mem. op., not designated for publication). In certain circumstances a warrantless seizure by police of an item that comes within plain view during their lawful presence in a private area may be reasonable under the Fourth Amendment. *State v. Rodriguez*, 521 S.W.3d 1, 18 (Tex. Crim. App. 2017). Thus, the plain-view doctrine requires (1) that law enforcement officials see an item in plain view at a vantage point where they have a right to be, and (2) it is immediately apparent that the item seized constitutes evidence, meaning there is probable cause to associate the item with criminal activity. *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012).

In addition to the plain-view doctrine, the "open fields" doctrine also allows law enforcement to enter and search an area of land without a warrant. *Rosalez v. State*, 875 S.W.2d 705, 713 (Tex. App.—Dallas 1993, pet. ref'd). The term "open field" may be defined as any unoccupied or undeveloped area outside the curtilage of a dwelling. *Carroll v. State*, 911 S.W.2d 210, 217 (Tex. App.—Austin 1995, no pet.). An "open field" need not be "open" or a "field" as those terms are commonly understood. *Id*.

The Fourth Amendment does, however, protect the curtilage of a home, and the extent of the curtilage is determined by factors that bear upon whether an individual reasonably expects that the area in question should be treated as the home itself. *See United States v. Dunn*, 480 U.S. 294, 300 (1987). In examining the extent of the curtilage question, we examine the proximity of the intruded area to the home,

the nature of the uses to which the area is put, whether the area is within the home's enclosure, and the steps the resident took to protect the area from observation of people passing by. *Id.* at 301. These "factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration— whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* It is where privacy expectations are most heightened. *See Florida v. Jardines*, 569 U.S. 1, 7 (2013) (describing curtilage as the area around the home "intimately linked to the home, both physically and psychologically").

Detective Jobe described the area where the truck was located as "basically land, a grass field with a dirt path that leads up to what would be a trailer, and then in the back side of that property there's a mobile trailer and there's a couple of storage sheds on that property." The truck was parked in the grass six feet behind the chain-linked fence that ran along the street. Detective Jobe's body cam video showed that the truck was parked yards away from the trailer and from four other cars that were parked in front of the trailer. Nothing blocked the view of the property and the truck from those driving by. The gate in front of the property was open, and there were no signs prohibiting trespassers. Thus, the truck was not parked in an area near or attached to the trailer, and the owners had not taken any steps to protect the area from view. Further, the area by the truck was used for trash collecting,

which the trial court could reasonably conclude was not "intimately tied" to the home.

Considering the relevant factors in the light most favorable to the trial court's ruling, the trial court could have reasonably concluded the area where the truck was parked was not so intimately linked, both physically and psychologically, to place it within the curtilage and therefore under the "umbrella" of Fourth Amendment protection. *See Dunn*, 480 U.S. at 301; *Jardines*, 133 S.Ct. at 1415. Rather, the court could have reasonably concluded the area was an "open field" because it was an undeveloped area outside the curtilage of the trailer. *See Carroll*, 911 S.W.2d at 217.

In reaching this conclusion, we reject Nowlin's reliance on *Collins v. Virginia*, 138 S.Ct. 1663 (2018). In that case, an officer conducted a warrantless search of a motorcycle parked inside a partially enclosed top portion of the driveway that abutted the house. *Id*. at 1668, 1671. A side door provided direct access between the partially enclosed section of the driveway and the house. *Id*. at 1671. The Court concluded the search violated the Fourth Amendment, in part, because the driveway enclosure constituted an area "adjacent to the home to which the activity of home life extends" and was properly within the curtilage. *Id*. at 1671.

Unlike the motorcycle in *Collins*, the truck in this case was not parked in part of an enclosed driveway next to the trailer. Further, it was not parked in an area

"beyond where a neighbor would venture." *Id.* (noting motorcycle was parked in the portion of the driveway beyond where a neighbor would go).

Nowlin had no expectation of privacy in the open field where the truck was parked. *See Rosalez*, 875 S.W.2d at 713 ("Because no reasonable expectation of privacy attaches to an open field, no fourth amendment protection extends to such an area."). Because Detective Jobe observed the truck, with its hood up, an engine hoist, a broken vent window, and a false license plate from a lawful vantage point, he did not commit an unlawful trespass onto the property. Officer Jobe saw the truck in plain view from a vantage point he had a right to be. *See Miller*, 393 S.W.3d at 266. Once he approached the truck, he observed the unattached VIN plate on the dashboard, which based on his training and experience further indicated the truck was involved in criminal activity. *Id.* Any subsequent search of the vehicle was likewise proper as a defendant lacks standing to contest the search of a stolen vehicle. *See Hughes v. State*, 897 S.W.2d 285, 305 (Tex. Crim. App. 1994) ("Any expectation of privacy appellant might claim in the stolen vehicle was not 'one society is prepared to recognize as reasonable.'").

Giving deference to the trial court's implied findings of historical facts and reviewing de novo the court's application of the law, we conclude the trial court properly denied Nowlin's motion to suppress because the truck was parked in an

open field, and Detective Jobe's observations were in plain view, both of which were theories of law applicable to the case. We overrule Nowlin's sole issue.[1]

## Conclusion

The judgment of the trial court is affirmed.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
191488F.U05

---

[1] We acknowledge Detective Jobe testified that his reason for entering the property was to issue a citation for violation of a city ordinance. A police officer's subjective motive will never invalidate objectively justified behavior under the Fourth Amendment; therefore, to the extent Nowlin argues the inapplicability of the city ordinance, our resolution remains the same. *See Walter*, 28 S.W.3d at 542.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CLIFTON MARK NOWLIN,
Appellant

No. 05-19-01488-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 2, Dallas County, Texas
Trial Court Cause No. F-1859157-I.
Opinion delivered by Justice Smith.
Justices Schenck and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered March 2, 2021