**AFFIRMED and Opinion Filed May 24, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-00882-CR**

**CHACEY TYLER POYNTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 354th District Court**
**Hunt County, Texas**
**Trial Court Cause No. 32739CR**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Carlyle
Opinion by Justice Schenck

Chacey Tyler Poynter appeals her conviction for murder. In two issues, she

asserts the trial court erred (1) in denying her motion to suppress certain statements

she made to law enforcement, and (b) in failing to include a jury instruction on

manslaughter. We affirm the trial court's judgment. Because all issues are settled

in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

Appellant was charged by indictment with the offense of capital murder. The

State alleged that on September 9, 2016, appellant—acting individually or together

with her paramour, Michael Glen Garza—intentionally and knowingly caused the death of her husband, Robert Louis Poynter, III, by shooting him with a firearm.

On April 15, 2019, appellant filed a motion to suppress statements she made to law enforcement, asserting her statements were obtained in violation of her right to remain silent, her right to counsel, and in violation of article 38.22 of the code of criminal procedure, governing when statements made by an accused as a result of custodial interrogation will be admissible as evidence. TEX. CODE CRIM. PROC. ANN. art. 38.22. The trial court held a hearing on the motion on April 25. The trial court denied the motion the following day and allowed appellant to carry her objections at trial when her statements were admitted into evidence.

A jury trial commenced on June 17, 2019, and concluded on June 27, with the jury finding appellant not guilty of capital murder, evidently rejecting the State's assertion Poynter was murdered for remuneration, finding her guilty of the lesser offense of murder and assessing punishment at life imprisonment and a fine of $10,000. This appeal followed.

## DISCUSSION

### I. Suppression of Statements made to Law Enforcement

The record establishes Sergeant Shane Meek spoke with appellant at the crime scene and read her *Miranda* warnings at that time. Thereafter, appellant was taken to the Royce City Police Department where Detective Michael Burk continued the interrogation, during which appellant admitted to having been involved in the

offense and signed written statements to that effect. Detective Burk did not read appellant the *Miranda* warnings but did confirm that Sergeant Meek had previously read the warnings to appellant.[1]

In her first issue, appellant urges the trial court erred in admitting State's Exhibit 14, the video recording of Detective Burk's interrogation of her, and her written statements, containing different accounts of the events leading to Poynter's murder, because they were obtained in violation of article 38.22 of the Texas Code of Criminal Procedure in that Detective Burk did not read her the full *Miranda* warnings.

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). This standard gives almost total deference to a trial court's determination of historical facts and applies a de novo review of a trial court's application of the law to those facts. *Id.* A trial court is the sole trier of fact, the judge of witness credibility, and the determiner of the weight given to witness testimony. *Id.* An appellate court reviews the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case. *Id.*

---

[1] Detective Burk, like Sergeant Meek, had been at the crime scene.

Article 38.22, section 3(a)(2) provides that "[n]o oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding unless . . . prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 [of article 38.22] and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning." TEX. CODE CRIM. PROC. ANN. art. 38.22(3)(a)(2). Section 2(a) bars admission of a statement unless it is shown that the defendant has been warned of the following:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time.

*Id.* art. 38.22(2)(a).

Prior cases have addressed situations such as the one presented here in which a suspect is warned about his or her *Miranda* rights, some break in the questioning occurs, and the questioning resumes without renewed administration of *Miranda* warnings. *See, e.g.*, *Bible v. State*, 162 S.W.3d 234, 241–42 (Tex. Crim. App. 2005) (concluding two sessions were part of a single interview and even if they were not, the warnings given in the second session were fully effective equivalent to the

–4–

*Miranda* requirements); *see also Satchell v. State*, No. 05-14-01197-CR, 2015 WL 9486107, at *5 (Tex. App.—Dallas Dec. 29, 2015, pet. ref'd) (mem. op., not designated for publication); *Hayes v. State*, No. 05–11–00260–CR, 2013 WL 1614108, at *3 (Tex. App.—Dallas Feb. 19, 2013, no pet.) (mem. op., not designated for publication); *Spears v. State*, No. 05–06–00691–CR, 2007 WL 2447233, at *3–4 (Tex. App.—Dallas Aug. 30, 2007, no pet.) (not designated for publication). If the totality of the circumstances indicate the second interview is essentially a continuation of the first, the *Miranda* warnings remain effective as to statements made during the second interview. *See Dunn v. State*, 721 S.W.2d 325, 328 (Tex. Crim. App. 1986) (noting that "rewarning is not required where the interrogation is only a continuation about the same offense"), *abrogated on other grounds by Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).

In *Bible*, the court of criminal appeals concluded that two interview sessions were part of a single interview for purposes of **both** *Miranda* and article 38.22 of the code of criminal procedure.[2] *Bible*, 162 S.W.3d at 242. In making this

---

[2] Appellant urges the Fourteenth District Court of Appeals decision in *Resendez v. State* supports her assertion that the police had to record *Miranda* warnings on the second videotape and creates a distinction between federal and state constitutional rights of *Miranda* and the statutory requirements of article 38.22, section 3(a)(2). 256 S.W.3d 315, 336 (Tex. App.—Houston [14th Dist.] 2007), *rev'd* 306 S.W.3d 308 (Tex. Crim. App. 2009). As an initial matter, the *Resendez* decision has been reversed, albeit on preservation of error grounds. Moreover, it is in conflict with the high court's decision in *Bible*. We acknowledge that the Fort Worth Court of Appeals, shortly before the court of criminal appeals issued its decision in *Bible*, concluded article 38.22, section 3(a)(2) had not been strictly complied with when the appellant, who had previously invoked his right to counsel, reinitiated contact with the interviewing deputy who simply stated "You've just had your rights read." *Hargrove v. State*, 162 S.W.3d 313, 323 (Tex. App.—Fort Worth 2005, pet. ref'd). In that case, the deputy admitted he did not know if the appellant had been advised of his rights while in front of the magistrate, just prior to the second interview, and there was no indication that the

determination, the court considered the (1) the passage of time, (2) whether the second interrogation was conducted by a different person, (3) whether the interrogation related to a different offense, and (4) whether the officer reminded the defendant of his earlier warnings.[3] *See id.* The court of criminal appeals derived these factors from a series of cases cited in the footnote of its earlier opinion in *Jones v. State*, 119 S.W.3d 766, 773 n.13 (Tex. Crim. App. 2003).

In this case, Sergeant Meek read appellant the *Miranda* warnings sometime between 11:30 and 11:37 p.m. on September 9, 2016, the evening of the offense. Appellant indicated she understood her rights, answered Sergeant Meek's questions, and revealed that her husband planned to divorce her and she feared he would try to take her daughter away from her. Appellant was detained for investigative purposes and taken to the Royse City Police Department where Detective Burk interviewed her. That interview began at approximately 2:20 a.m. on September 10. Detective Burk, having also been at the crime scene, began by stating, "I understand that, uh, Officer Meek read you the Miranda Rights and everything out there in the field. Is that correct?" To which appellant responded "yes." Appellant made two written statements while at the police department summarizing the events leading up to the murder of Poynter.

appellant acknowledged having been so advised. In this case, appellant acknowledged that she had been advised of her rights. Moreover, as *Bible* is the controlling law here, we do not consider our sister courts' holdings to be persuasive.

[3] It appears this factor need not be considered if the other factors lead to a finding the sessions are a single interview. *Bible*, 162 S.W.3d at 242.

In connection with its ruling on appellant's motion to suppress, the trial court entered findings of fact and conclusions of law. In doing so, the trial court considered the *Bible* factors and found, in relevant part:

- that Detective Michael Burk's interview of appellant at the police department was a continuation of the interview Sergeant Shane Meek began for purposes of article 38.22 of the code of criminal procedure;

- that the interrogation of appellant by Sergeant Meek and Detective Burk were about the same offense, is a factor that weighs in favor of the State;

- that the interrogations were conducted by different officers is a factor that weighs against the State, but only slightly—noting Detective Burk referenced Sergeant Meek's warnings at the beginning of his interview and it was clear appellant understood the warnings and her rights;

- that the length of time between the initial Miranda warnings and when Detective Burk continued the interview was less than 3 hours is a factor that weighs in favor of the State; and

- that appellant was reminded of having been read her warnings earlier is a factor that weighs in favor of the State.

Like the trial court, we conclude that *Bible* is controlling here and is instructive as to the weight we give the relevant factors with respect to the facts presented.

In this case, the passage of time was similar to that involved in *Bible*, being less than three hours. Thus, the first *Bible* factor weighs in favor of the trial court's ruling. Although different officers conducted questioning during each session, each session focused on the same crime. On balance, the second and third factors weigh in favor of the trial court's ruling. Detective Burk confirmed that Sergeant Meek had previously read appellant the *Miranda* warnings although he did not briefly

–7–

remind her of her right to silence, to terminate the interview, and to counsel, and did not expressly secure her consent to continue the interview, as the officer did in *Bible*.

Under the totality of the circumstances, we conclude that the initial questioning of appellant at the crime scene, during which she was read the *Miranda* warnings, and the questioning of appellant at the police station were essentially a single interview for *Miranda* and article 38.22 purposes, and that Sergeant Meek's *Miranda* warnings to appellant at the scene were still effective when Detective Burk took over the interrogation, after confirming the prior warnings, approximately 3 hours later. *Id.*; *Franks v. State*, 712 S.W.2d 858, 861 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). This conclusion eliminates any concern over the fact that Detective Burk did not repeat the warnings or secure her express consent to continue.[4]

As to appellant's assertion her written statements should have been suppressed because they were obtained in violation of article 38.22, the State responds that nowhere before the trial court did appellant make an articulable argument that the written statements should be excluded from evidence. We note, the trial court's findings are limited to appellant's oral statements to Detective Burk. TEX. R. APP. P. 33.1(a)(1)(A) (complaint must be made to the trial court by a timely request, objection, or motion that states the grounds with sufficient specificity to

---

[4] The final *Bible* factor is not given particular weight if we determine the sessions were essentially a single interview. *See Bible*, 162 S.W.3d at 242.

make the trial court aware of the complaint). Nevertheless, if appellant's written motion was sufficient to preserve her complaint about the written statements, we conclude her complaint lacks merit.

The admissibility of appellant's written custodial statements is governed by article 38.22, section 2 of the code of criminal procedure. TEX. CODE CRIM. PROC. ANN. art. 33.22, § 2. Section 2 provides, in relevant part:

> No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the fact of the statement that . . . the accused, prior to making the statement . . . received from the person to whom the statement was made a warning that:
>
> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time.

*Id.* 38.22, § 2(a). Here, appellant's written statements include the statutory warnings, before appellant's recitation of the events, and include her separate initials for each warning as well as beside a pre-printed statement indicating that she understands each of the warnings and waives her rights. Thus, article 38.22 section 2 was clearly

satisfied in this case. *See, e.g.*, *Millslagle v. State*, 150 S.W.3d 781, 784 (Tex. App.—Austin 2004, pet. dism'd untimely filed).

While appellant cites authority concerning knowing and voluntary waiver of rights, she provides no argument concerning the voluntariness of her statements. Nevertheless, the record demonstrates appellant understood the warnings given to her and freely spoke with both Sergeant Meek and Detective Burk.

For the foregoing reasons, we conclude the trial court did not err in denying appellant's motion to suppress. We overrule appellant's first issue.

## II. Jury Instruction – Lesser Included Offense

In her second issue, appellant urges the trial court erred in failing to instruct the jury on the lesser-included offense of manslaughter. Appellant asserts evidence was presented indicating she did not intend for Garza to shoot and kill Poynter but rather only wanted him to scare Poynter and indicating she acted recklessly rather than intentionally or knowingly.

A trial court's decision to submit or deny a lesser-included offense instruction is reviewed for an abuse of discretion. *Treadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). We apply a two-step test to determine whether an instruction on a lesser-included offense should have been given to the jury. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The first step is to determine whether the lesser offense is included within the greater offense. *Id.* If this threshold is met, the second step is to determine whether the evidence shows that if appellant is guilty,

–10–

she is guilty only of the lesser offense. *Id.* This second step is a question of fact and is based on the evidence presented at trial. *Id.* at 383. The evidence must consist of more than mere speculation and requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Id.* at 385.

During her interview with Detective Burk, appellant initially denied knowing who shot Poynter and eventually identified Garza as the shooter. She described a turbulent relationship with Poynter and admitted to having an affair with Garza and to having discussed Poynter's alleged abusive behavior with him. Appellant indicated that during the weeks prior to the date of the murder, Garza had been talking about killing Poynter. Prior to the shooting, appellant was at Garza's home. She observed that he had set out guns on the kitchen table, which he then loaded into his truck. Appellant told Garza she did not want to be there to "watch it," but Garza said she had to be. Appellant admitted they had planned to "do it" that night and that the original plan had been to get Poynter to meet appellant in "deep" Dallas to make it look like a robbery. The plan changed as the evening progressed and evolved into luring Poynter to a deserted dirt road. Garza planned to take Poynter's truck and burn it after shooting him.

Garza drove his truck and parked it a few miles away from the crime scene. Appellant picked him up and he directed appellant to the dirt road and, before getting out of her vehicle somewhere along the road, told her to continue driving until she

–11–

came to a turn in the road and then to drive into the ditch and then call Poynter to have him come and rescue her. Poynter came to the location and as he was trying to get appellant's vehicle out of the ditch, Garza murdered him. Appellant told Detective Burk she did not want the murder to happen and she tried to tell Garza to stop as he fired the shotgun.

In addition to the statements appellant made to Detective Burk, several text messages were admitted into evidence indicating appellant wanted Poynter "GONE" and that she needed it to happen as it was her only way out.

Assuming, without deciding, manslaughter is a lesser included offense in this case, we conclude the trial court did not abuse its discretion in denying appellant's request for a lesser-included instruction on manslaughter because there is not a scintilla of evidence to support a finding appellant merely acted recklessly in luring Poynter to a deserted location to have an encounter with Garza, a man appellant knew to have violent tendencies, had expressed a desire and willingness to kill Poynter, and whom she had accompanied, while armed, to the proximity of the murder scene. Appellant did not testify during the guilt-innocence phase of trial and her initial statements during her interrogation concerning wanting to scare Poynter, but not harm him, in light of her later confession and knowledge of the "plan" and participation in same, does not rebut or negate an element of the offense of murder. *Id.* We overrule appellant's second issue.

## CONCLUSION

We conclude the trial court did not err by denying appellant's motion to suppress and did not err by denying appellant's request for a lesser included offense instruction. We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

190882F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CHACEY TYLER POYNTER,
Appellant

No. 05-19-00882-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District
Court, Hunt County, Texas
Trial Court Cause No. 32739CR.
Opinion delivered by Justice
Schenck. Justices Reichek and
Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 24th day of May, 2021.