**AFFIRMED; Opinion Filed December 29, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01197-CR

**EDWARD LERON SATCHELL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F12-24811-X**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Myers

Appellant Edward Leron Satchell was convicted by a jury of aggravated robbery and sentenced by the trial court to 45 years in prison. In two issues, appellant contends (1) the trial court erred by denying appellant's motion to suppress because he did not knowingly, intelligently, and voluntarily waive his rights under article 38.22 and Miranda, and (2) the trial court erred when it failed to enter a written order setting forth the specific factual findings that supported its conclusion that appellant's confession was voluntary. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

Approximately two weeks before the start of trial, appellant filed a "Motion for Hearing on Voluntariness of Any Admission or Confession." The day before trial, after voir dire, defense counsel asked for "a brief hearing" regarding "whether or not the voluntariness of his statement."

Defense counsel advised the court that the hearing would take no more than ten or fifteen minutes.

The prosecutor announced that the detective who conducted appellant's video-recorded interrogation—I.C. Hale of the Garland Police Department—was not available that afternoon to testify. The court suggested they conduct the hearing the next morning before the trial began. When the prosecutor asked for clarification regarding what issue the defense was pursuing, defense counsel clarified that he was complaining about "the Miranda" given at the scene where appellant was arrested. The prosecutor then explained there were actually two videos—one showing appellant being Mirandized at the scene and another showing that he was "re-Mirandized" at the police station. The trial court suggested they should "just go ahead and watch . . . that little part" of the video and defense counsel responded, "That's fine." The court stated that it did not want to "watch the hour and a half . . . just the part that we're talking about," and both defense counsel and the prosecutor agreed. The prosecutor told the court that Detective Hale would be present the next morning if the court had any questions after watching the video. The prosecutor also told the court that she did not plan on introducing the first video at trial; rather, it was merely "to prove that [appellant] was Mirandized."

The court first watched a portion of the video that was recorded at the scene of the arrest. The arrest-scene video, which was admitted for record purposes as State's exhibit 25, showed appellant seated in the backseat of a patrol car shortly after being arrested. He knocked on the rear door and told one of the officers that he wanted to speak to the detective. Detective Hale opened the door and appellant said he had been told by one of the officers that the offense was an "attempted aggravated robbery." Before the discussion went any further, Detective Hale interrupted him and recited the following *Miranda*/article 38.22 warnings: "You have a right to remain silent and not make any statements at all, and any statements you make may and probably

–2–

will be used against you in court; you have the right to have a lawyer present to advise you prior to or during any questioning; if you cannot afford a lawyer, the State of Texas will provide you with one; and you have the right to stop any questioning at any time." Detective Hale then asked appellant whether he understood these rights, and appellant said, "Yes, sir." Appellant appeared eager to talk to the detective, who said that they would talk more at the police station because the detective preferred to do it "man to man, face to face."

The trial court also watched a portion of the video from the interrogation at the police station. That video began with Detective Hale telling appellant that he "read these to you out there at the scene but, officially, I'm going to read them to you again." The detective showed appellant a form titled "Miranda Warning[,] Warning to be Given Before Taking Any Oral or Written Confession," State's exhibit 26, which listed those warnings in the following manner:

1. I have the right to remain silent and not make any statement at all and that any statement I make may be used against me at my trial.

2. Any statement I make may be used as evidence against me in court.

3. I have the right to have a lawyer present to advise me prior to and during any questioning.

4. If I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning; and

5. I have the right to terminate the interview at anytime.

Detective Hale asked appellant, "This is your Miranda rights, okay? Do you understand all those?" Appellant replied, "I understand everything." Appellant added that he "don't need no lawyer here" and was "fully capable of speaking." The detective then asked appellant to sign the acknowledgement indicating that he understood the Miranda rights. As appellant signed the acknowledgment, he said he understood it "100 percent." During the interrogation that followed, appellant confessed both orally and in writing to the instant home invasion aggravated robbery.

After the trial court watched the videos, defense counsel argued that appellant should

have been given his Miranda warnings a second time when he was being questioned at the police station because there was a break in the questioning and too much time had passed after the first Miranda warning. When the court asked the prosecutor if she knew how much time had passed between the warnings at the scene and appellant's statement at the police station, she replied, "I don't, but I couldn't imagine more than about an hour." The prosecutor pointed out that the in-car video showed appellant continuing to try to "engage the detectives" after he was admonished in the police car, and that he wanted to "say more." She also reminded the court that the video of the interrogation showed appellant being given a form with the Miranda warnings on it and saying out loud that he understood everything and did not need a lawyer before he started talking.

The trial court watched the videos a second time and noted that the warnings Detective Hale recited were "95 percent" accurate and had the "same meaning" as the warnings in article 38.22. The court said it was "not aware of anything that says [the warnings] have to be given a second time." The next morning, the court announced that "[u]pon reviewing some case law, I have decided that the statement is admissible, the Miranda warnings were appropriate or were sufficient." During Detective Hale's testimony at trial, when the State moved to admit State's exhibit 24, the video recording of appellant's interrogation, defense counsel objected "on the grounds of voluntariness, that the statement made by [appellant] was not done voluntarily." The trial court overruled the objection and allowed the video to be played for the jury.

On remand from this Court, the trial court subsequently entered the following findings of fact:

> 1. Appellant was given his Miranda warnings by Detective Hale while he was in the police vehicle at the scene of the arrest. This was on video, State's Exhibit 25.

> 2. Detective Hale asked appellant if he understood those rights, and appellant answered "Yes, sir."

–4–

3. Defense counsel acknowledged that appellant had been admonished while in the police vehicle.

4. Defense did not object that this was an improper admonishment.

5. Defense counsel's argument was that his client should have been given his Miranda warnings a second time when appellant was being questioned at the police station because too much time had passed from the first Miranda warning.

6. The court noted from the time documented on the recorded exhibit at the scene and the recorded exhibit at the station, that less than one hour had elapsed from the time the full Miranda warnings were given at the scene.

7. At the police station, Detective Hale starts to read appellant his Miranda warnings again, noting that he had already read them to appellant at the scene, but that he was going to read them to him again.

8. Before he could get past the first warning, appellant told Detective Hale: "I understand everything; I don't need no lawyer here for nothing; I am fully capable of speaking . . ."

9. In response to appellant's claims that he understood everything and didn't need an attorney, Detective Hale asked appellant if he would "just sign [this Miranda Warning—State's Exhibit 26] acknowledging that you understand your rights. . ."

10. Appellant promptly stated "I understand 100%."

11. Appellant then signed the Miranda form (State's Exhibit 26, page 3) and voluntarily started talking.

12. He subsequently gave a written statement to the Detective. (State's Exhibit 26, pages 1 and 2).

The court concluded that under article 38.21 of the Texas Code of Criminal Procedure, appellant's statements, written and oral, were freely and voluntarily made without coercion. Additionally, based on State's exhibits 24 and 25, both of which were played in court at the hearing, the court concluded that appellant had been properly given his Miranda warnings and had knowingly, intelligently, and voluntarily waived those rights, and that both his oral and written statements had been obtained in accordance with article 38.22 of the Texas Code of Criminal Procedure.

–5–

## DISCUSSION

We begin with appellant's second issue, in which he argues the trial court erred by failing to enter written findings of fact supporting its conclusion that appellant's confession was voluntary. When, as in this case, the voluntariness of a statement is challenged, article 38.22, section 6 of the Texas Code of Criminal Procedure requires the trial court make written findings of fact and conclusions of law regarding the voluntariness of the challenged statement. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 6; *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2005) (holding that where trial court fails to issue requisite findings of fact and conclusions of law pursuant to article 38.22, section 6, proper procedure is to remand for compliance with statute). The findings and conclusions are mandatory whether or not the defendant objected to their absence. *Urias*, 155 S.W.3d at 142. We previously abated this appeal so that the trial court could make the requisite findings and conclusions, which it did. Accordingly, appellant's second issue is now moot.

In his first issue, appellant contends the trial court erred by denying the motion to suppress because appellant did not voluntarily waive his rights under article 38.22 and Miranda. Appellant's complaint is that he was not properly admonished by the detective and, therefore, did not knowingly, intelligently, and voluntarily waive his rights. Appellant argues that when he arrived at the police station his rights were never properly read to him: "The detective basically set the paperwork in front of [appellant] but it is clear from the video that [appellant] never actually read [the paper containing the written warnings] because he and the detective continued the talk the entire time [appellant] was signing the document." Appellant asserts that, as a result, "he was not aware of the nature of the rights he was abandoning and the consequences of the decision to abandon them."

The State, however, argues that appellant failed to preserve error because his complaint

on appeal—that his confession to the robbery should have been suppressed because he did not knowingly, intelligently, and voluntarily waive his rights before making the statement—does not comport with the objection at trial that appellant's statement "was not done voluntarily." We need not resolve this issue. Assuming without deciding that appellant preserved his complaint, the record supports the trial court's ruling.

A bifurcated standard of review is applied to a trial court's ruling on a motion to suppress evidence. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). This standard of review gives almost total deference to a trial court's determination of historical facts and applies a de novo review of a trial court's application of the law to those facts. *See St. George*, 237 S.W.3d at 725; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A trial court is the sole trier of fact, the judge of witness credibility, and the determiner of the weight given to witness testimony. *See St. George*, 237 S.W.3d at 725; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). An appellate court reviews the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case. *See St. George*, 237 S.W.3d at 725; *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

Article 38.21 of the Texas Code of Criminal Procedure provides that a defendant's statement may be used against him "if it appears that the same was freely and voluntarily made without compulsion or persuasion." *See* TEX. CODE CRIM. PROC. ANN. art. 38.21; *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). The determination of whether a statement is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition. *See Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007); *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). A statement may be deemed involuntary under several theories: (1) Article 38.22, § 6 (general voluntariness); (2) *Miranda* as expanded in article 38.22,

§§ 2 and 3 (the Texas confession statute); or (3) the Due Process Clause. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008); *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996). The statement may be involuntary under one, two, or all three of these theories. *Oursbourn*, 259 S.W.3d at 169. "A statement that is 'involuntary' as a matter of constitutional law is also 'involuntary' under Article 38.22, but the converse need not be true." *Id.* Ordinarily, proof of proper warnings preceding the written statement and a defendant's willingness to waive his rights following those warnings should suffice to meet the State's burden on the issue of voluntariness. *Griffin v. State*, 765 S.W.2d 422, 430 (Tex. Crim. App. 1989).

Section 2 of article 38.22 bars admission of a defendant's written statement unless, inter alia, the statement's face shows the defendant has been warned of the following:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time. . . .

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(a). Article 38.22, section 3(a)(2) provides that no oral statement of an accused made as a result of custodial interrogation is admissible against him in a criminal proceeding unless, inter alia, prior to the statement but during the recording he is given the warnings in section 2(a). *Id.* art. 38.22, § 3(a)(2). Under section 3(e)(2), it is sufficient if "the accused was given the warning in Subsection (a) of Section 2 above or its fully effective equivalent." *Id.* at § 3(e)(2). Courts have long held that there is not one singularly correct form of the required warnings and that substantial compliance with article 38.22 and Miranda is sufficient. *See, e.g., Bible v. State*, 162 S.W.3d 234, 240 (Tex. Crim. App. 2005);

*Nonn v. State*, 41 S.W.3d 677, 679 (Tex. Crim. App. 2001); *Martinez-Hernandez v. State*, 468 S.W.3d 748, 759 (Tex. App.—San Antonio 2015, no pet.); *Rutherford v. State*, 129 S.W.3d 221, 224–25 (Tex. App.—Dallas 2004, no pet.); *see also Florida v. Powell*, 559 U.S. 50, 60 (2010).

Prior cases have addressed situations like this in which a suspect is warned about his Miranda rights, some break in the questioning occurs, and the questioning resumes without the administration of new Miranda warnings. *See, e.g., Bible*, 162 S.W.3d at 241–42; *Hayes v. State*, No. 05–11–00260–CR, 2013 WL 1614108, at *3 (Tex. App.—Dallas Feb. 19, 2013, no pet.) (mem. op., not designated for publication); *Spears v. State*, No. 05–06–00691–CR, 2007 WL 2447233, at *3–4 (Tex. App.—Dallas Aug. 30, 2007, no pet.) (not designated for publication). If the totality of the circumstances indicates the second interview is essentially a continuation of the first, the Miranda warnings remain effective as to statements made during the second interview. *See Dunn v. State*, 721 S.W.2d 325, 328 (Tex. Crim. App. 1986) (noting that "rewarning is not required where the interrogation is only a continuation about the same offense"), *abrogated on other grounds by Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). In making this determination courts consider the (1) the passage of time, (2) whether the second interrogation was conducted by a different person, (3) whether the interrogation related to a different offense, and (4) whether the officer reminded the defendant of his earlier warnings. *See Bible*, 162 S.W.3d at 242.

In this case, appellant was given the Miranda warnings by Detective Hale while appellant was seated in the back seat of the police vehicle at the scene of the arrest. Those warnings were, as the trial court correctly noted, in substantial compliance with the requirements of Miranda and article 38.22, section 2(a). Appellant appeared eager to talk to the detective, who told appellant that they would talk later at the police station. Furthermore, the record supports the trial court's finding that less than one hour passed between Detective Hale's reading of the Miranda warnings

at the scene of the arrest and the start of the interrogation at the police station. The video from the arrest scene shows appellant was arrested at approximately 12:48 a.m. on Tuesday, December 4, 2012. The interrogation at the police station started, and the written Miranda warnings were signed, at 1:40 a.m. that same day. At the start of the interrogation, Detective Hale showed appellant the Miranda warnings that were printed on the form quoted above, reminding appellant that those warnings had been read to him at the scene of the arrest. Detective Hale asked appellant if he understood the rights that were printed on the form, and appellant replied that he understood "everything." He added that he did not need an attorney and was fully capable of speaking. The detective asked appellant to sign the acknowledgement on the form indicating he understood his rights. As appellant signed the acknowledgment, he stated that he understood it "100 percent." Under the totality of the circumstances, we conclude that the reading of the Miranda rights at the scene of the arrest and the questioning of appellant at the police station were essentially a single interview for Miranda purposes, and that Detective Hale's Miranda warnings to appellant at the scene were still effective when he interviewed appellant at the police station less than one hour later. Thus, the trial court did not abuse its discretion by denying appellant's motion to suppress and overruling his objection at trial.[1]

We affirm the trial court's judgment.

/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
141197F.U05

---

[1] We interpret appellant's trial objection as simply reiterating his pretrial complaint; therefore, it presents no additional grounds for reversal in this case.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EDWARD LERON SATCHELL, Appellant

No. 05-14-01197-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F12-24811-X.
Opinion delivered by Justice Myers. Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of December, 2015.